|  | FILED |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF COLUMBIA | OCT 07 2010<br>Clerk, U.S. District and<br>Bankruptcy Courts |

)
) Chapter 11
MARC BARNES ) Case No. 10-00743
)
ANNE BARNES )
)
    Debtors. ) Judge S. Martin Teel, Jr.
_____ )

### LIMITED OBJECTION OF ENHANCED CAPITAL DISTRICT FUND, LLC TO DEBTORS' MOTION TO SELL 1350 OKIE STREET N.E., WASHINGTON, D.C. FREE AND CLEAR OF LIENS AND ENCUMBRANCES WITH LIENS AND ENCUMBRANCES TO ATTACH TO PROCEEDS OF SALE

Enhanced Capital District Fund, LLC ("Enhanced Capital"), by and through its undersigned counsel, hereby files this limited objection to the Notice of Motion to Sell 1350 Okie Street N.E., Washington, D.C. (the "Property") Free and Clear of Liens and Encumbrances with Liens and Encumbrances to Attach to Proceeds of Sale (the "Sale") filed by Marc Barnes and Anne Barnes (collectively, the "Debtors") (Docket No. 66, the "Motion"), and in further support thereof respectfully states as follows:

### BACKGROUND

Enhanced Capital is a secured creditor of the Debtors pursuant to those certain Secured promissory Notes dated July 3, 2009 issued by each of Okie Dokie, Incorporated and Park Place, Incorporated and guaranteed by Marc Barnes pursuant to a Guaranty Agreement and cross-guaranteed by each of Okie Dokie, Incorporated and Park Place, Incorporated pursuant to a Corporate Guaranty (collectively, the "Loan Documents"). Pursuant to the terms of the Loan Documents, Enhanced Capital has a second-lien security interest in, among other things, the Property, as properly perfected by that certain UCC Financing Statement filed on August 28, 2009, in the Office of the District of Columbia Recorder of Deeds as Document No. 2009095592

1

and amended on December 30, 2009, as Document No. 2009139824. As of today, the outstanding indebtedness owed to Enhanced Capital is approximately $237,829.02, which is greater than the amount set forth in the Debtor's Motion.

## LIMITED OBJECTION

Enhanced Capital objects to the Debtors' Motion to Sell the Property free and clear of its position as a secured creditor, as the Motion does not provide for payment in full—or even of any portion—of its allowed secured claim at closing. Debtors, by their proposal, essentially seek to convert Enhanced Capital's second lien position into an unsecured position, and to do so with no evidentiary support.

The Sale, as proposed by the Motion, will purportedly pay Eagle Bank, the first secured lien-holder against the Property, in full ("at or about" $6,000,000.00) on account of its first-lien security interest in the Property. While the Debtors seem to indicate in the Motion that the Purchase Price (as defined in the Motion) is well in excess of the amount owed to Eagle Bank (the "Remainder"), the Motion proposes to remit the Remainder to the Debtors in a form of a "take back in the amount of One Million Four Hundred Thousand Dollars ($1,400,000.00)," leaving nothing to Enhanced Capital at the time of closing notwithstanding this overage, and offering no comfort that the Debtors would ever be financially capable of paying Enhanced Capital. *See* Motion at ¶11.

Enhanced Capital understands the proposal to mean that the "take back" shall be in a form of a Purchaser (as defined in the Motion) issued take-back note issued to the Debtors in the amount of $1,400,000.00, which Purchaser shall not begin to make payments on for three years following the closing of the Sale (though interest, at 8%, will begin to accrue). Three years

2

following the closing of the Sale, installment payments of $35,199.82 shall be paid to the Debtor over the course of five years. *See* Exhibit 1 to Motion at ¶20(a)(3).

Enhanced Capital objects to the fact that the Debtors do not identify where the installment payments, if they are ever made by the Purchaser, will be held (i.e., in escrow, the Debtors' personal bank accounts, etc.) nor does the Motion place any restriction on how such funds shall be (or not be) utilized. It is unclear in the Motion what Enhanced Capital's lien is attaching to but it seems clear nonetheless that there will be no actual sale proceeds to which Enhanced Capital's lien may attach. At best, Enhanced Capital's lien would attach to the *promise* that the Purchaser will be able to, and will in fact, make the installment payments under the take-back note and that the Debtor, in turn, will pay the installment proceeds to Enhanced Capital until its lien is paid in full. The Motion, essentially, shifts the risk of business failure of the Purchaser to Enhanced Capital over the next eight years, in addition to requiring that Enhanced Capital bear the risk that the Debtors will not pay the installment proceeds to Enhanced Capital in satisfaction of its secured debt if such payments are made by the Purchaser to Enhanced Capital. Notwithstanding these facts, the Debtors request that Enhanced Capital release its lien on the Property within the next month.

In addition, while Enhanced Capital does not categorically object to the sale of the Property to the Purchaser (though Enhanced Capital reserves its rights to do so until the Debtors provide additional detail to illustrate its marketing efforts of the Property), it does object to receiving less than adequate protection for its liens and interests in the Property upon a sale under 11 U.S.C. 363 free and clear of all encumbrances. Enhanced Capital will not receive any payment on account of the Sale of its collateral until three years following the closing of the Sale, if at all. Enhanced Capital does not herein object to the Sale if Enhanced Capital were to

3

receive payment in full satisfaction of its allowed amount of its secured claim at the closing of the Sale in exchange for the release of Enhanced Capital's lien on the Property.

Further, the Motion, which seeks to alter the legal rights of Enhanced Capital, is being heard on an expedited basis, on the supposed basis that the Debtors will lose the Purchaser if the Sale cannot be consummated on or before October 15, 2010. The Debtors have not provided any details as to their efforts to market the property and seek additional offers.

## ARGUMENT

*A. The Motion is Unclear Regarding Repayment Assets Available to Enhanced Capital and the Debtors' Obligations to Repay Enhanced Capital's Secured Lien.*

The bankruptcy court has "wide discretion in structuring sales of estate assets." *In re Wintz Cos.*, 219 F.3d 807, 812 (8th Cir. 2000). And, the bankruptcy court has "ample latitude to strike a satisfactory balance between the relevant factors of fairness, finality, integrity, and maximization of assets." *Id.* The bankruptcy court must be "mindful of the interests of unsecured creditors and the goal of maximizing the value of the bankruptcy estate." *In re Farmland Industries, Inc.*, 289 B.R. 122, 126 (B.A.P. 8th Cir. 2003) (citation omitted). The sale must "comply with the Bankruptcy Code with an appreciation for commercial reasonableness, good business judgment and common sense; and an understanding of the effect the entire proceeding may have on the community in which the Debtor operates." *In re President Casinos, Inc.*, 314 B.R. 784, 785-86 (Bankr. E.D. Mo. 2004).

The current structure of the Sale leaves much uncertainty as to whether this Sale is in the best interest of the estate. The Motion indicates that the Sale will "create a reserve of money for the payment of the secured debt of Enhanced Capital" but does not indicate from where such a reserve will originate. *See* Exhibit 1 to Motion at ¶12. The Reserve (i.e., the remaining amount of the Purchase Price after payoff of Eagle Bank's first-priority secured interest in the Property)

4

7210126v1

is in the form of a take-back note only. *See* Exhibit 1 to Purchase Agreement at ¶20. Thus it is unclear where any such "reserve of money" for the payment of Enhanced Capital's secured claim will originate. Nor does the contemplated structure result in any "balance of the sale proceeds" that could be deposited into an interest bearing escrow account in accordance with paragraph number four of the Debtors' proposed order approving the sale. *See* Proposed Order to Motion at ¶4.

Additionally, there is no express obligation anywhere in the Motion or its exhibits that the Debtors are obligated to pay any portion of the take-back note proceeds to Enhanced Capital in the future.

B. *Adequate Protection of Enhanced Capital's Security Interest is Lacking.*

To obtain approval of a sale of substantially all of its assets outside of a Chapter 11 plan process, a debtor bears the burden of showing that "the price is fair which would require information on the value of the assets being sold...." *In re Exaeris Inc.*, 380 B.R. 741, 745 (Bankr. D. Del. 2008).

As a condition to effecting any sale of property under the Bankruptcy Code, a debtor is required to provide adequate protection to, *inter alia*, any secured creditor affected by such sale. Section 363(e) provides, in pertinent part, that:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property ... sold ... or proposed to be ... sold ... by the trustee, the court, with or without a hearing, **shall** prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e) (emphasis added); *see also In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D.Del. 1991) ("[A] court should prohibit or modify the sale at the request of parties

7210126v1

with security interests in the property if the court finds that it is necessary to ensure that the parties are adequately protected").

Section 363(e) sets forth a mandate that a party with an interest in property is to be provided with adequate protection or the Court "*shall*" prohibit or condition such sale of assets. Additionally, Collier's states:

> [T]he requirement for adequate protection in Section 363(e) is mandatory. If adequate protection cannot be offered, **such sale . . . of the collateral must be prohibited**."

*See 3 Collier on Bankruptcy* ¶ 363.05[2] at 363-42 (15th ed. rev.2005) (emphasis added). The Bankruptcy Code further provides that the debtor "bears the burden of proof" for establishing that the interest holder has been provided such adequate protection. *See* 11 U.S.C. § 363(p)(1). The Debtors have failed to provide evidence showing Enhanced Capital's interests are being adequately protected. Indeed, under the proposed circumstances, it is difficult to fathom how Enhanced Capital's interests are being protected at all, since (1) Eagle Bank will be fully paid; (2) the Debtors will receive a take-back apparently with no restrictions; and (3) Enhanced Capital is merely left to hope that the Debtors will have funds available for payment *beginning* in thirty-seven months.

Although the Bankruptcy Code does not expressly define adequate protection, Bankruptcy Code Section 361 sets forth three methods for satisfying requirements for adequate protection: (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the indubitable equivalent of the secured creditor's interest in such property. 11 U.S.C. § 361. *See also RTC v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 560 (3d Cir. 1994). "It is generally accepted . . . that the concept of adequate protection requires a debtor to propose some form of relief that will preserve the secured

6

7210126v1

creditor's interest in the collateral, pending the outcome of bankruptcy proceedings." *In re Monroe Park*, 17 B.R. 934, 937 (Bankr. D.Del. 1982).

The purpose of adequate protection "is to ensure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland Dev. Group, Inc.*, 16 F.3d at 564. As stated in the legislative history to Section 361, the purpose of "adequate protection" is to protect the property interests of secured creditors pursuant to the Fifth Amendment prohibition against takings without just compensation. S.Rep.No.95-989, 95th Cong., 2d Sess. 49 (1978), reprinted in (1978) U.S.Code Cong. & Ad.News 5787, 5835.

The legislative history of Bankruptcy Code Section 363(f) reflects this requirement: "[A] sale under this subsection is subject to the adequate protection requirement. Most often, adequate protection in connection with the sale free and clear of other interests will be to have those interests attached to the proceeds of the sale." H.R.Rep. No. 95-595, at 345 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6302. In the alternative, courts have required a debtor to pay a creditor in full when seeking to effect a sale free and clear of liens and interests in order to satisfy the adequate protection requirement. *See, e.g., In re Kellstrom Industries, Inc.*, 282 B.R. 787, 794 (required interest holder to be paid in full where debtor sought to sell assets free and clear).

To establish that a secured creditor is being adequately protected, the debtor must: (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence. *In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985); *see also In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d

7

1017, 1019 (11th Cir. 1984) ("In determining whether a creditor's secured interests are so protected, there must be an individual determination of the value of that interest and whether a proposed use of cash collateral threatens that value"); *cf., In re Swedeland Dev. Group, Inc.*, 16 F.3d at 564 (adequate protection requires a showing that the secured creditors' interests are not negatively affected by the proposed action being undertaken by debtors).

Here, the Debtor has not made an attempt to illustrate how Enhanced Capital's security interest is adequately protected pursuant to the Motion. Should the Sale take place as contemplated in the Motion, Enhanced Capital's lien will attach, at most, to the potential promise that proceeds may be paid out by the Purchaser upon the take-back note (as opposed to actual proceeds of the Sale), though even this is unclear in the Motion, as the Debtor is under no express obligation to segregate and pay to Enhanced Capital installment payments received under the take-back note. Moreover, and even if an order approving the Motion made clear the Debtors' obligations to segregate and hold in trust for the benefit of Enhanced Capital the installment payments received under the take-back note, Enhanced Capital would have to wait three years before possibly receiving any payment on account of the same, assuming the Purchaser is able to pay on account of the installment payments.

Pursuant to the Motion, the Debtor seeks to shift the burden of business failure of the Purchaser over the course of the next eight years. There is no evidence that the Purchaser is financially solvent, intends to escrow the funds necessary to pay Enhanced Capital or otherwise has the financial wherewithal to perform its obligations under the take-back note *beginning* in three years. That obligation is unsecured and carries the inherent risk that the Purchaser will be unable to satisfy its obligations.

7210126v1

The Debtors will likely encounter feasibility issues in proposing a confirmable plan to the extent they are relying on the third party Purchaser to fund their plan in three years. To the extent Enhanced Capital is not paid at closing, its allowed secured claim must be dealt with in the Debtors' Plan of Reorganization, which will likely have a negative impact on the unsecured creditor class. Accordingly, the Motion raises serious concerns as to whether the Sale fosters the important goal of maximizing the value of the bankruptcy estate.

Further, the Debtors do not explain their efforts to market the sale of Property, nor do they indicate how long the Property has been for sale, or if any other offers have been received. Accordingly, it is difficult to evaluate the commercial reasonableness, business judgment and common sense of such an expedited sale, especially when the Debtor is acting as Seller without the benefit of an appraisal, and without the advice of a broker. Although the tax assessed value of the property is only $3,135,000.00 according to the Debtors' Exhibit 2 to the sale motion, it seems the value of the property, along with the goodwill, trade name, improvements, fixtures thereon and furniture, is much higher, as demonstrated by the Purchaser's offer of $7.8 million.

## RESERVATION OF RIGHTS

Enhanced Capital also reserves any and all rights, claims and objections with respect to the Motion including, but not limited to, the right to raise any such right, claim and/or objection during the hearing on the Motion.

## CONCLUSION

This Court should deny approval of the Debtors' proposed expedited sale of the Property unless (1) the Debtors sufficiently demonstrate the reasonableness of the Sale (including, but not limited to, the marketing process of the Property), (2) clarify how and from what proceeds Enhanced Capital will be paid on account of its secured lien, and (3) grant adequate protection to

Enhanced Capital on account of its secured lien in the form of payment in full of the lien or, should the Court deny such a request, require the Purchaser to escrow the funds necessary to pay Enhanced Capital at closing (and/or illustrate its financial ability to pay such funds three years from now) and require the Debtors to escrow installment payments received under the take-back note for the benefit of Enhanced Capital until Enhanced Capital's secured debt is paid in full.

Date: October 7, 2010

Robert T. Kugler, (MN Bar # 0194116)
Lara O. Glaesman, (MN Bar # 0316866)
**LEONARD, STREET AND DEINARD**
*Professional Association*
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-7063
Facsimile: (612) 335-1657
Robert.Kugler@leonard.com
Lara.Glaesman@leonard.com

AND

Date: October 7, 2010

Eric W. Bloom, (DC Bar # 417819)
Myja K. Kjaer, (IL Bar # 6289949)
**WINSTON & STRAWN LLP**
1700 K Street, N.W.
Washington, D.C. 2006-3817
Telephone: (202) 282-5000
Facsimile: (202) 282-5100
ebloom@winston.com
mkjaer@winston.com

**ATTORNEYS FOR ENHANCED CAPITAL DISTRICT FUND, LLC**

10

7210126v1