The document below is hereby signed.

Signed: December 16, 2020



_S. Martin Teel Jr._ (signature)
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MARC S. BARNES AND ANNE M. | ) | Case No. 10-00743 |
| BARNES, | ) | (Chapter 11) |
| | ) | |
| Debtors. | ) | |

MEMORANDUM DECISION AND
ORDER RE MOTION TO ENFORCE PLAN INJUNCTION
AND DISCHARGE INJUNCTION AGAINST THE INTERNAL REVENUE SERVICE

The debtors, Marc S. Barnes and Anne M. Barnes, obtained

confirmation of a plan under Chapter 11 of the Bankruptcy Code

(11 U.S.C.).  They have filed a *Motion to Enforce the Plan*

*Injunction and Discharge Injunction Against the Internal Revenue*

*Service* (Dkt. No. 339) wherein they seek a declaration that the

discharge injunction of 11 U.S.C. § 524(a)(2) and the injunctions

set forth in their *Plan*, including modifications thereto

presented at the confirmation hearing, and in the *Confirmation*

*Order* confirming the *Plan*, bar the Internal Revenue Service

("IRS") from collecting its claims relating to income taxes for

the calendar year 2003.  For the reasons stated herein, I

conclude that the IRS remains free to collect its claim for 2003

income taxes and interest thereon but that, as the IRS agrees, penalties relating to that claim have been discharged and are subject to the discharge injunction of 11 U.S.C. § 524(a)(2).  In summary:

(1) the claim for taxes and interest for 2003 is nondischargeable;

(2) the court lacked authority to confirm a plan or to decree in a confirmation order that the nondischargeable claim is discharged;

(3) any discharge of the nondischargeable claim in the *Plan* or in the *Confirmation Order* is nullified by the commands of 11 U.S.C. §§ 1141(a) and 1141(d)(2) and is not binding on the IRS;

(4) any release of the nondischargeable claim is the equivalent of a discharge and is thus barred by §§ 1141(a) and 1141(d)(2);

(5) the IRS's failure to seek to amend its proof of claim to include its claim for 2003 income taxes is irrelevant because § 523(a)(2)(A) makes the claim nondischargeable "whether or not a claim for such tax was filed or allowed;"

(6) properly interpreted, the *Plan*, as modified, was not intended to discharge or release the nondischargeable claim;

(7) properly interpreted, the injunctions in the *Plan*, as modified, and in the *Confirmation Order* do not apply to the nondischargeableclaim, and any such injunction would not apply to the nondischargeable claim because:

(a) it would permanently enjoin collection of the claim, thus amounting to a discharge, and would accordingly be rendered ineffective by 11 U.S.C. §§ 1141(a)(1) and 1141(d)(2);

(b) it was rendered ineffective (i) by the debtors' failure to give creditors, before the confirmation hearing, notice that included in conspicuous language a statement, as required by Fed. R. Bankr. P. 2002(b)(3)(A), that the *Plan* proposes an injunction, and identifying who and what is enjoined, and (ii) by the debtors' failure to set forth in the *Plan*, as modified, the injunction in conspicuous language as required by Fed. R. Bankr. P. 3016(c); and

(c) any such injunction in the *Confirmation Order* is contrary to the court's intention at the confirmation hearing to only confirm the *Plan*, as modified, such that under Fed. R. Civ. P. 60(a), the court will amend the *Confirmation Order* to declare that the injunction is ineffective.

I

BACKGROUND

The debtors filed their Federal income tax return for the 2003 tax year on September 21, 2004, wherein the debtors' self-assessment reflected that they owed $30,754.  The IRS conducted an audit of the debtors' return over a period of years, resulting in the IRS issuing a Notice of Deficiency on June 3, 2008, determining a deficiency in tax of $54,486, an accuracy-related penalty of $10,897, and late-filing fees of $5,691.  The debtors petitioned the U.S. Tax Court for a redetermination of the deficiency on August 19, 2008.  A trial in the Tax Court was held on June 10, 2009, and post-trial briefing was completed on October 9, 2009.

The debtors initiated the above-captioned case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on July 26, 2010.  The filing of the petition initiated the automatic stay of 11 U.S.C. § 362(a), which stayed the continuation of the proceeding in the Tax Court.

On May 2, 2011, the IRS filed an amended proof of claim asserting an unsecured priority claim of $545,779.10, and a general unsecured claim of $102,720.33.  That proof of claim did not include the IRS's claim for income taxes for 2003.  However, the claim for 2003 income taxes was nondischargeable under 11 U.S.C. § 523(a)(1)(A) "whether or not a claim for such tax was

4

filed or allowed." On May 24, 2011, the debtors filed jointly, with entities that the debtors owned and that had filed their own bankruptcy cases, a *First Amended Joint Plan of Reorganization of Park Place, Inc., Okie Dokie, Inc., and Marc and Anne Barnes Under Chapter 11 of the Bankruptcy Code* (the "*Plan*") (Dkt. No. 200), along with an amended *Disclosure Statement* relating thereto (Dkt. No. 201). That *Disclosure Statement*, disseminated to creditors upon being approved, included a description of pending litigation but did not include the Tax Court proceeding as pending litigation. The *Disclosure Statement* noted the priority tax claim of $545,779.10 filed by the IRS and the treatment to be accorded that claim. Specifically, the *Plan* provided:

> The Internal Revenue Service's Priority Tax Claim against the Barnes shall be Allowed in the amount that is the lesser of (x) $545,779.10 or (y) an amount agreed to by the parties or determined by the Bankruptcy Court.

Neither the *Disclosure Statement* nor the *Plan* made mention of the pending Tax Court litigation or the IRS's assertion of a tax deficiency of $54,486 for the year 2003, which was a priority tax claim under 11 U.S.C. § 507(a)(8)(A), and which was nondischargeable under 11 U.S.C. § 523(a)(1)(A).[1]

As discussed in more detail below, on July 15, 2011, the court entered an *Order Confirming Debtors' First Amended Joint*

---

[1] The IRS's penalty claims asserted in the notice of deficiency were not priority tax claims and the IRS agrees that the penalty claims have been discharged.

*Plan of Reorganization* (the "*Confirmation Order*") confirming the *Plan* with certain modifications presented at the confirmation hearing held on the *Plan*.  After entry of that *Confirmation Order*, the court entered an order on September 21, 2011 (Dkt. No. 243) allowing the Tax Court litigation to resume, but indicated:

> This order does not address whether any tax deficiencies, penalties, or interest found by the Tax Court to have been owed for the tax year 1973 can be pursued by way of an amended proof of claim in this court or can be pursued as a claim against the debtors otherwise.  Those issues are not before the court.

The *Plan* had appointed a Distribution Agent to administer distributions under the *Plan*.  On December 16, 2011, the Distribution Agent filed a *Final Report and Motion for Final Decree* (Dkt. No. 282).[2]  After a delay to dispose of certain pending matters, the court entered a *Final Decree* (Dkt. No. 331) on May 24, 2012, and the case was closed that same day, but the closing of the case had no impact on the issues being addressed herein.

The Barnes had not completed payments under the *Plan*, and under 11 U.S.C. § 1141(d)(5), they were generally not entitled to receive discharges until they had completed *Plan* payments.

---

[2]   The Distribution Agent noted that there had been substantial consummation of the *Plan*, as defined in 11 U.S.C. § 1101(2).  Even though payments under the *Plan* had not yet been completed, substantial consummation of the *Plan* permitted the case to be closed as fully administered under 11 U.S.C. § 350(a) and Fed. R. Bankr. P. 3022 upon disposition of certain pending proceedings.

However, upon completing *Plan* payments, they would be entitled to seek a reopening of the case in order to obtain discharges.[3]

Meanwhile, the Tax Court case had proceeded.  On March 21, 2012, the Tax Court upheld the IRS's notice of deficiency. *Barnes v. Commissioner*, T.C. Memo. 2012-80.  That decision was affirmed on appeal in *Barnes v. Commissioner*, 712 F.3d 581 (D.C. Cir. 2013).  However, the bar date for the IRS to file a proof of claim in the bankruptcy case as to the claim for the 2003 tax year had ended on January 24, 2011.  Accordingly, the IRS was not entitled to receive any distributions under the confirmed *Plan* on its claim for 2003 income taxes.

Upon prevailing in the Tax Court, the IRS assessed the deficiency on August 1, 2012.  The debtors completed payments under their *Plan* as of August 10, 2017.  The IRS filed a notice of tax lien regarding the assessment for 2003 taxes, interest, and penalties on November 29, 2017.  The debtors then pursued a so-called collection due process appeal with the IRS's Appeals Office.  On March 13, 2019, the IRS's Appeals Office issued a *Notice of Determination* regarding the appeal and upholding the

---

[3]   The *Final Decree* and the closing of the case similarly did not bar reopening of the case to address enforcement of any *Plan* provisions or any discharge injunction arising upon the debtors receiving discharges.  *See* Fed. R. Bankr.P. 3022, Advisory Committee Note (1991) ("The court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future.").

collection efforts with respect to the tax year 2003, reasoning
that the bankruptcy did not include the tax year 2003.

Because they had completed payments under the *Plan* by August
2017, the debtors were entitled to a discharge under 11 U.S.C.
§ 1141(d)(5)(A).  On March 26, 2019, thirteen days after the
IRS's Appeals Office had issued its *Notice of Determination*
upholding the IRS's collection efforts, the debtors filed a
motion to reopen the case, a *Motion for Entry of Order of Chapter
11 Discharge* (Dkt. No. 337), and the motion at issue here, the
*Motion to Enforce the Plan Injunction and Discharge Injunction
Against the Internal Revenue Service*.  The court reopened the
case, and on June 10, 2019, entered an order granting the *Motion
for Entry of Order of Chapter 11 Discharge* (Dkt. No. 361),
granting the Barnes discharges, and directing "that all
provisions in the Confirmation Order and the *Plan* effective upon
discharge are hereby effective."

II

THE PERTINENT PROVISIONS OF
THE PLAN AND THE CONFIRMATION ORDER

The *Plan* included several provisions that addressed the
releasing of the debtors from claims, and described the extent of
the debtors' discharges, the binding effect of the *Plan*, and the
extent of the *Plan*'s injunction.  The IRS did not file an
objection to the *Plan* prior to the confirmation hearing, and did

8

not appear at the confirmation hearing at which modifications were made to the *Plan*.

The discharge provision in *Plan* § X.B (which were not modified at the confirmation hearing) provided in relevant part:

> B. *Discharge of Claims and Cancellation of Equity Interests*
>
> Except as otherwise specifically provided in any other provision of the Plan, or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall be in complete satisfaction of and shall discharge and terminate . . . all pre-Effective Date debts and Claims . . . against . . . the Debtors . . . to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in any other provision of the Plan, on the Effective Date, . . . all Claims against the Debtors . . . shall be and shall be deemed to be, satisfied, discharged and terminated, and all Holders of Claims against any of the Debtors shall be precluded and enjoined from asserting against the Debtors any . . . Claim against any of the Debtors based upon any claim . . . that occurred prior to the Effective Date, whether or not such Holder has filed a proof of claim . . . .

Similarly, before being modified, the *Plan*'s § X.F ("*Release by Holders of Claims and Interests*") provided in relevant part:

> **To the extent permitted by applicable law** and approved by the Bankruptcy Court, on and after the Effective Date, each Holder of a Claim . . . shall be deemed to have . . . released and discharged the Released Parties from any and all Claims . . .  that such Entity is entitled to assert based . . . upon any act, omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date . . . .

(Emphasis added.)  The Released Parties included the debtors.

9

In full, § X.F provided:

*F. Release By Holders of Claims and Interests*

To the extent permitted by applicable law and approved by the Bankruptcy Court, on and after the Effective Date, each Holder of a Claim or an Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Released Parties from any and all Claims, Interests, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity is entitled to assert based in whole or in part upon any act, omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date, provided however, that the foregoing release shall not operate to waive or release any claims (1) for fraud, gross negligence, willful misconduct or criminal conduct; or (2) based upon any post-Effective Date obligations of any party under the Plan, the Liquidation Trust or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; and (3) with respect to distributions on account of Allowed Claims, if any, that any of the Holders may have against any of the Debtors' Estates.

The *Plan* included three other provisions pertinent to the arguments raised concerning the *Motion* at hand, §§ X.C, X.D, and X.E, which provided in relevant part:

*C. Binding Effect*

Except as otherwise provided in sections 1141(d)(3) and (d)(5) of the Bankruptcy Code, on and after the Confirmation Date, and subject to the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against . . . the Debtors . . . whether or not the Claim . . . of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.

*D. Term of Injunction or Stay*

Unless otherwise provided herein, all injunctions or
stays arising under section 105 or 362 of the Bankruptcy
Code, any order entered during the Chapter 11 Cases under
section 105 or 362 of the Bankruptcy Code or otherwise,
and in existence on the Confirmation Date, shall remain
in full force and effect until the later of the Effective
Date and the date indicated in such order.

The Effective Date of the *Plan* was September 14, 2011. *See Notice*

*of Occurrence of Effective Date* (Dkt. No. 242).

**E. Injunction Against Interference with Plan**

**Upon the entry of the Confirmation Order with
respect to the Plan, all Holders of Claims . . . shall be
enjoined from taking any action to interfere with the
implementation or consummation of the Plan.**

(Bolded language in original.) The *Plan* also included an

exculpation provision, § X.G (*Exculpation*), which has no bearing

on the issues here because it did not purport to release anyone

with respect to claims (like the IRS's claim for 2003 taxes)

based on events occurring prepetition.

The United States Trustee objected to confirmation, viewing

the *Plan*'s release and exculpation provisions as being overly

broad. The United States Trustee was not representing the IRS in

the case: the IRS is represented in bankruptcy cases by the

United States Attorney's office or by attorneys in the Tax

Division of the U.S. Department of Justice. The objection made

clear that the United States Trustee wished to have the *Plan*'s

discharge provisions be consistent with the Bankruptcy Code, by

11

stating at paragraph 11:

> It also bears mention that among the parties who would be
> released and effectively discharged on the effective date
> is a debtor that is liquidating and therefore not
> entitled to a discharge under 1141(d)(3), and joint
> debtors who are not entitled to a discharge until
> completion of plan payments pursuant to section
> 1141(d)(5).

The court held a confirmation hearing on July 6, 2011. As noted

previously, the IRS was not represented at the confirmation

hearing.

At the confirmation hearing, in response to the objection to

confirmation filed by the United States Trustee, the debtors

presented, for the first time, proposed modifications to the

*Plan*'s sections I.A.67 (the definition of Released Parties), X.F.

(*Release by Holders of Claims and Interests*), and X.G.

(*Exculpation*). For example, the modifications removed

Professionals from the definition of Released Parties in

§ I.A.67, resulting in § X.B no longer addressing estate

professionals, but § X.F was modified to address the extent of

the release of Professionals. The debtors handed to the court a

blackline version of those modified sections to evidence the

modifications. The court appended the blackline version to the

*Case Hearing Summary* (Dkt. No. 214).[4]

The debtors' counsel represented that the modifications pertinent here were in resolution of the objections to confirmation asserted by the United States Trustee, and implicitly represented that the changes were not material and adverse with respect to any creditors (because otherwise creditors would have been entitled to an opportunity to object to any adverse terms).

The court suggested that the debtors submit a modified plan containing the modifications, but the debtors requested that the modifications be placed in a confirmation order to be drafted. The court accepted the implicit representations of the debtors' counsel that the modifications were not materially adverse to any creditors, making it unnecessary to file and disseminate an amended version of the *Plan* incorporating the modifications with notice of the opportunity to object to the modifications. The court agreed that the *Plan*, as modified by the modifications announced at the confirmation hearing, could be confirmed, and acquiesced in the debtors' request to only submit a proposed confirmation order setting forth the agreed modifications.

---

[4] At the confirmation hearing, the debtors also agreed with Liberty Surplus Insurance Corporation to insert into the *Plan* an "Insurance Neutrality" provision (*see* Dkt. No. 214) and agreed to changes, to be included in the order confirming the *Plan*, regarding when the District of Columbia's priority tax claim would be paid, and regarding what would be property of the estate if the case were converted to Chapter 7.

If the modifications had materially and adversely affected the rights of any creditors, 11 U.S.C. § 1128(a) and Fed. R. Bankr. P. 2002(b)(2) would have required dissemination to those creditors of a new version of the *Plan* as modified with notice of the opportunity to object to the *Plan* as modified.[5]  If the modifications had been materially adverse to the IRS, it was entitled under 11 U.S.C. § 1128(a) and Fed. R. Bankr. P. 2002(b)(2) to receive, but did not receive, notice of the opportunity to object to confirmation of the *Plan* as modified. Notice cannot be treated as a non-issue based on the modifications having been announced at the confirmation hearing, as occurred in *In re Nat'l Truck Funding LLC*, 588 B.R. 175, 179 (Bankr. S.D. Miss. 2018), because the IRS did not receive notice and was not represented at the confirmation hearing.

The debtors submitted a proposed order titled *Order Confirming Debtors' First Amended Joint Plan of Reorganization* (the "*Confirmation Order*") incorporating the modifications presented at the confirmation hearing.  To carry out my stated intention at the confirmation hearing to confirm the *Plan* with the indicated modifications, I signed the *Confirmation Order* on July 14, 2011.  On July 15, 2011, the Clerk's office entered the

---

[5]  Further, by reason of 11 U.S.C. § 1127(c) and Fed. R. Bankr. P. 3019, any material and adverse changes might have required a new disclosure statement eliciting new voting on the *Plan* under 11 U.S.C. § 1125.

14

*Confirmation Order* (Dkt. No. 217).  The debtors did not notify the IRS regarding the modifications of the *Plan* prior to the entry of the *Confirmation Order.*

Significantly, the modified version of § X.F of the *Plan* eliminated the prior opening language: "To the extent permitted by applicable law and approved by the Bankruptcy Court," so that in relevant part the first sentence of modified § X.F stated:

> On and after the Effective Date, each Holder of a Claim . . . shall be deemed to have . . . released and discharged the Released Parties from any and all Claims . . . that such Entity is entitled to assert based in whole or in part upon any act, omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date . . ., provided however, that the foregoing release shall not operate to (1) discharge the Barnes . . . from any debt **provided for in the Plan** until the Court grants them a discharge upon completion of all payments under the Plan, or as otherwise provided in section 1141(d)(5) of the Bankruptcy Code . . . and <u>further</u> <u>provided</u> <u>however</u>, that the foregoing release shall not operate to waive or release any claims . . . for fraud, gross negligence, willful misconduct or criminal conduct.[6]

---

[6]  The modifications of the first sentence of § X.F made other changes to the original version of § X.F, to address concerns of the United States Trustee, but those changes are not pertinent to the issues at hand.

(Emphasis added.)[7]

After its first sentence, the modified version of § X.F

added four new sentences, which, as relevant here, included the

following final two new sentences:[8]

> The release described above shall be enforceable as a
> matter of contract against any Holder of a Claim . . .
> timely notified of the provisions of the Plan.  Holders
> of Claims . . . shall be enjoined from commencing or
> continuing any Cause of Action, employment of process or
> act to collect, offset or recover any Claim . . . that is
> released as provided herein.  Holders of Claims . . .
> shall be enjoined from commencing or continuing any Cause
> of Action, employment of process or act to collect,
> offset or recover any Claim . . . that is released as
> provided herein.

As noted already, the IRS had not been notified of the

modifications of the *Plan*, and had not been given notice of the

opportunity to object to the modifications if they were meant to

be adverse to the IRS.

For the sake of completeness, to allow the reader to verify

that the foregoing captures the pertinent modifications to § X.F,

---

[7] Recall that the *Disclosure Statement* and the *Plan*
addressed the priority tax claim the IRS had filed for
$545,779.10 but had not addressed the asserted tax deficiency of
$54,486 being addressed in the Tax Court.  However, it is
unnecessary to decide whether the *Plan* provided for the $54,486
deficiency claim for income taxes for the year 2003.  As will be
seen, the discharge features of the *Plan* and the *Confirmation
Order* could not discharge the claim for income taxes for the year
2003, regardless of whether the *Plan* could be deemed to have
provided for the claim.

[8] The first two new sentences dealt with the extent to
which the release under § X.F would extend to Professionals and
are of no relevance to the issues at hand.

I note that, in full, the modified version of § X.F provided:

*F. Release By Holders of Claims and Interests*

On and after the Effective Date, each Holder of a Claim or an Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Released Parties from any and all Claims, Interests, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity is entitled to assert based in whole or in part upon any act, omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Debtors' Chapter 11 Cases and the reorganization or liquidation efforts of the Debtors, provided however, that the foregoing release shall not operate to (1) discharge the Barnes or Reorganized Barnes from any debt provided for in the Plan until the Court grants them a discharge upon completion of all payments under the Plan, or as otherwise provided in section 1141(d)(5) of the Bankruptcy Code; or (2) discharge Okie Dokie or the Liquidating Debtor from any debt provided for in the Plan; and further provided however, that the foregoing release shall not operate to waive or release any claims (1) for fraud, gross negligence, willful misconduct or criminal conduct; or (2) based upon any post-Effective Date obligations of any party under the Plan, the Liquidation Trust or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; and (3) with respect to distributions on account of Allowed Claims, if any, that any of the Holders may have against any of the Debtors' Estates. The foregoing release also shall extend to each Professional engaged by the Debtors as to any Cause of Action that could be asserted by the Holder of a Claim, Interest or expense that was or could have been asserted in these Chapter 11 Cases, whether or not such Claim, Interest or expense was scheduled, filed, allowed or disallowed; provided however that such release shall only become effective with respect to such Professionals upon entry of an order approving such Professionals' final fee application covering the period prior to the Effective Date; and further provided that if any such Cause of Action is

raised prior to the deadline for objecting to such
Professional's final fee application, the release shall
be subject to such modification, limitation or condition
as the Bankruptcy Court determines to be appropriate in
the final fee order. Nothing herein shall alter or affect
any defense as may result from the entry of an order
approving any final fee application. The release
described above shall be enforceable as a matter of
contract against any Holder of a Claim, Interest or
expense timely notified of the provisions of the Plan.
Holders of Claims, Interests and expenses shall be
enjoined from commencing or continuing any Cause of
Action, employment of process or act to collect, offset
or recover any Claim, Interest or expense that is
released as provided herein.

The modifications to the *Plan* also included a revised § X.G,

but despite a contention to the contrary that the debtors made in

oral argument on the *Motion* at hand, it has no relevance to the

debtors' 2003 income tax debt. As in the case of the original

§ X.G, the exculpation of Released Parties (such as the debtors)

appearing in the first sentence applied only to any liability

arising from or related to various acts or omissions occurring

postpetition.  Revised § X.G added further sentences addressing

the extent to which Professionals would be exculpated, providing

that the exculpation under § X.G "shall extend to each

Professional engaged by the Debtors as to any Cause of Action

that could be asserted by the Holder of a Claim, Interest or

expense that was or could have been asserted in these Chapter 11

Cases," but the term "Professional" did not include the debtors.

It finally added a provision regarding the enforeability of the

exculpation and enjoined Holders of Claims from pursuing any

Claim "released and exculpated as provided herein," obviously meaning released and exculpated as provided in § X.G.

For the sake of completeness, and to allow the reader to verify that the foregoing accurately describes the revised § X.G, I set forth the revised § X.G in full:

*X. G. Exculpation*

Except as otherwise specifically provided in the Plan or Plan Supplement, the Released Parties shall not have or incur any, and each Released Party is hereby released and exculpated from all, liability arising from or related to [various acts or omissions occurring postpetition]; provided, however, that the Plan shall not exculpate any Person from any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, criminal conduct or fraud. The foregoing exculpation also shall extend to each Professional engaged by the Debtors as to any Cause of Action that could be asserted by the Holder of a Claim, Interest or expense that was or could have been asserted in these Chapter 11 Cases, whether or not such Claim, Interest or expense was scheduled, filed, allowed or disallowed; provided however that such exculpation shall only become effective with respect to such Professionals upon entry of an order approving such Professionals' final fee application covering the period prior to the Effective Date; and further provided that if any such Cause of Action is raised prior to the deadline for objecting to such Professional's final fee application, the exculpation shall be subject to such modification, limitation or condition as the Bankruptcy Court determines to be appropriate in the final fee order. Nothing herein shall alter or affect any defense as may result from the entry of an order approving any final fee application. The exculpation described above shall be enforceable as a matter of contract against any Holder of a Claim timely notified of the provisions of the Plan. Holders of Claims, Interests and expenses shall be enjoined from commencing or continuing any Cause of Action, employment of process or act to collect, offset or recover any Claim, Interest or expense that is released and exculpated as provided herein.

Beyond the modifications to the *Plan* itself, the lengthy

*Confirmation Order* included provisions that the debtors had not

advised at the confirmation hearing would be included in the

*Confirmation Order* but that presumably were intended to be

consistent with the *Plan* as modified.  Paragraph 10 of the

*Confirmation Order* provided:

> Except as otherwise provided in the Plan or this Order
> (i) the rights afforded in the Plan and the payments and
> distributions to be made thereunder shall be in complete
> satisfaction of and shall discharge and terminate all
> Equity Interests in the Debtors and all pre-Effective
> Date debts and Claims . . . .

Paragraph 11 of the *Confirmation Order* provided:

> Except as otherwise provided in the Plan or this Order,
> all Holders of Equity Interests and Claims shall be
> precluded and enjoined from asserting against the
> Debtors, the Liquidating Debtor, the Reorganized Debtors,
> the Liquidating Trustee, the Liquidation Trust or any of
> their respective assets or properties any Equity Interest
> or Claim based upon any claim, right, act, omission,
> transaction or other activity of any kind or nature that
> occurred prior to the Effective Date.

The *Confirmation Order* required that "[t]he Debtors shall

mail a copy of this Order confirming Plan to all creditors,

equity security holders and other parties in interest pursuant to

Bankruptcy Rule 2002(f)(8) and file herein a certificate to that

effect within seven (7) days of the date of entry of this Order."

The debtors filed a certification (Dkt. No. 222) July 22, 2011,

certifying that the *Confirmation Order* was mailed by first-class

mail to creditors, including the IRS, on July 21, 2011.

The IRS did not appeal the *Confirmation Order*.  As noted

20

previously, the IRS sought and obtained relief from the automatic
stay on September 21, 2011, for the resumption of the Tax Court
proceeding, which led to the Tax Court decision upholding the
asserted deficiency for 2007 income taxes, and, eventually, to
the collection efforts that the Barnes assert are now barred by
the *Plan* and the *Confirmation Order*.

A hearing on the *Motion to Enforce the Plan Injunction and
Discharge Injunction Against the Internal Revenue Service* was
held on June 4, 2019.  At the hearing, the debtors argued that
their 2003 income tax debt was not a nondischargeable debt under
11 U.S.C. § 523, and even if it was nondischargeable, the *Plan*
and *Confirmation Order* nevertheless barred its collection.  The
debtors and the IRS agreed that the accuracy-related penalty and
the late-filing penalty are dischargeable.  For the reasons
stated at the hearing, the court rejected the argument as to the
income tax itself for 2003 (including interest accruals thereon),
and ruled that those amounts were nondischargeable under
§ 523(a)(1)(A).  The only issue remaining is whether the *Plan* and
the *Confirmation Order* nevertheless discharged the debtors' 2003
income tax debt or enjoined its collection even though it is a
nondischargeable debt under § 523(a)(1)(A).

III

LACK OF AUTHORITY TO DECREE IN A CHAPTER
11 PLAN OR A CONFIRMATION ORDER THAT A DEBT
NONDISCHARGEABLE UNDER 11 U.S.C. § 523(a)(1) IS DISCHARGED

The debtors contend that several provisions of the *Plan* and the *Confirmation Order* provide for a discharge of their 2003 income tax debt.  They further contend that the court had authority under the Bankruptcy Code to discharge and release the nondischargeable debt for 2003 income taxes.  For reasons explored below, the court lacked such authority (unless, perhaps, the IRS had consented to such a provision, which it had not).

The debtors argue that authority under the Bankruptcy Code for a Chapter 11 plan and confirmation order to grant a discharge of nondischargeable tax debts is found in § 1141(d)(1), which provides in relevant part:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the order confirming the plan—
>
> (A) discharges the debtor from any debt that arose before the date of such confirmation[.]

Via this language, § 1141(d)(1) permits "the plan, or . . . the order confirming the plan" to except from discharge debts that would otherwise be discharged under § 1141(d)(1)(A).

However, § 1141(d)(1) does not provide leeway to discharge any claim excepted from discharge under § 523(a) that § 1141(d)(2) (part of the same subsection (d) as § 1141(d)(1)) expressly makes not subject to being discharged under

22

§ 1141(d)(1).   Section 1141(d)(2) provides: "A discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title."   In the words of § 1141(d)(1), it is "otherwise provided in this subsection" (via § 1141(d)(2)) that the confirmation of a plan does not operate under § 1141(d)(1) to discharge a debt that is nondischargeable under § 523.   With the assessed tax of $54,486 at issue being excepted from discharge under § 523(a)(1)(A), it is obvious that § 1141(d)(2) requires that the tax debt was *not* discharged via § 1141(d)(1) by the confirmation of the *Plan*.

The debtors further support their argument under § 1141(d)(1) by noting that § 1141(d)(6) states: "Nothwithstanding paragraph (1), the confirmation of a plan does not discharge" corporations of certain tax debts.   However, § 1141(d)(2) already makes the assessed tax of $54,486 at issue here not subject to being discharged by operation of that paragraph (1), namely, § 1141(d)(1).

The Bankruptcy Code provision, 11 U.S.C. § 105(a), allowing the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," is not statutory authority for ordering nondischargeable debts to be discharged.   The Supreme Court has held that "[i]t is hornbook law that § 105(a) 'does not allow the bankruptcy court

to override explicit mandates of other sections of the Bankruptcy Code.'" *Law v. Siegel*, 571 U.S. 415, 421 (2014), quoting 2 Collier on Bankruptcy ¶ 105.01[2], p. 105-6 (16th ed. 2013). Similarly, § 1141(d)(1) would not allow the court to override explicit mandates of other provisions within the very same subsection.

Finally, § 523(a)(1)(A) contains no exception that can be invoked to find that a claim described therein is dischargeable, in contrast to 11 U.S.C. § 523(a)(8), which makes certain student loans nondischargeable "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents."

The debtors cite *In re Breland*, 474 B.R. 766 (Bankr. S.D. Ala. 2012); *In re Matunas*, 261 B.R. 129 (Bankr. D.N.J. 2001); *Burford v. Dist. Dir., Dallas Dist., IRS (In re Burford)*, 231 B.R. 913 (Bankr. N.D. Tex. 1999); and *Willauer v. United States (In re Willauer)*, 192 B.R. 796 (Bankr. D. Mass. 1996), as cases in which the IRS's nondischargeable claims were discharged by court order. However, all of these cases, except one, were cases in which the IRS and the debtor had entered into a stipulation or consent order whereby the IRS consented to release of its claim for certain nondischargeable debts. These courts held that the IRS was bound by the stipulations and consent orders, but made clear that the IRS would not have been so bound, had the release

24

only been in the plan.  *See*, *e.g.*, *In re Breland*, 474 B.R. at 770 ("The dischargeability of the tax debts pursuant to § 523 would only be relevant if the confirmed plan, and not the Consent Order, operated as a determination of the debtor's tax liability . . . The IRS is bound by the terms of the Consent Order which sets out the amount and character of the tax debt at issue.").

The one exception, *In re Burford*, also does not support the proposition that the Bankruptcy Code provides courts authority to discharge nondischargeable tax claims.  In *Burford*, the debtor had proposed a plan to pay the IRS $800 per month until the debt was paid with 10% interest per annum.  The IRS objected to this treatment and the Court issued a confirmation order that required the debtor to make payments "in an amount sufficient to amortize and fully retire the debt within a six-year period."  231 B.R. at 916.  The court concluded that the debtor necessarily relied on the IRS to provide the debtor with the amortization schedule for the debtor to "fully retire the debt" within the prescribed six-year period.  The IRS, however, did not include postpetition interest in the amortization schedule the IRS provided to the debtor.  The court held that the IRS was estopped from asserting the postpetition interest, even though such interest was nondischargeable under the Bankruptcy Code.  The court specifically stated:

25

> The court also notes that this case does not involve a
> plan attempting to bind the government to an allowed or
> restructured claim outside of the claims allowance
> process.  Indeed, the confirmation order does not address
> the amount of the claim.  Rather, it orders the payment
> of amounts sufficient to fully retire the debt.  The
> order deferred to the parties to fix the amount.  The
> debtor deferred to the IRS.  Also, the plan does not
> provide for a discharge of the debt.  This decision is
> not about discharge; it is about the actions of the
> parties taken following a binding court order not subject
> to collateral attack.

*Id.* at 922-23.

As specifically noted by the court in *Burford*, the court was not acting under the Bankruptcy Code to discharge the IRS's claim, it was acting under equity principles made applicable due to the IRS's failure to fully perform under a court order.  When a creditor holds a claim excepted from discharge under § 523, such that under § 1141(d)(2) the discharge under § 1141(d)(1) does not discharge the debt, the court has no authority to direct that the discharge applies to the debt.  *Burford* does not stand to the contrary.

There is no stipulation or consent order in this case that is binding on the IRS and that discharges the debtors' 2003 income tax debt.  Nor was the IRS ordered to provide the debtors with an amortization schedule, in which the IRS neglected to include the 2003 income tax debt.  Accordingly, the cases cited by the debtors are not applicable here.

In arguing that a plan or confirmation order can discharge a nondischargeable debt, the debtors rely on *United Student Aid*

26

*Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).  In *Espinosa*, the debtor's confirmed plan in a Chapter 13 case provided that payment would be made on the principal of the student loan, but not on interest, and upon completion of the plan, the interest would be discharged.  Under § 523(a)(8), a student loan debt is excepted from discharge "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents."  The debtor never filed an adversary proceeding for a determination of undue hardship, and the Bankruptcy Court never made an undue hardship finding. The creditor failed to object to the plan or file an appeal upon entry of the confirmation order.  The Court held that while the Bankruptcy Court made a legal error in confirming a plan that discharged a nondischargeable debt, the order was not void because the creditor, having had notice of the plan and the confirmation order, did not timely object to the plan or appeal the confirmation order.  Accordingly, *Espinosa* makes clear that there is no authority in the Bankruptcy Code for a bankruptcy court to declare discharged a debt that is nondischargeable by reason of 11 U.S.C. §§ 523(a)(1) and 1141(d)(2).  Whether such an erroneous declaration is enforceable is a different question addressed in part V below.

In sum, there is no statutory provision that would permit a court to provide in a Chapter 11 confirmation order that a debt

27

described in § 523(a)(1)(A) is discharged or to confirm a plan
providing that a debt described in § 523(a)(1)(A) is discharged.
To include such a provision would be error.

IV

IF ANY PROVISION OF A CHAPTER 11 PLAN
OR THE ORDER CONFIRMING THE PLAN DIRECTS
THAT A CLAIM EXCEPTED FROM DISCHARGE UNDER
11 U.S.C. § 523(a)(1) IS DISCHARGED, THAT PROVISION
IS INEFFECTIVE TO DISCHARGE THE CLAIM, AND THE DISCHARGE
INJUNCTION OF 11 U.S.C. § 524(a)(2) DOES NOT APPLY TO THE CLAIM

Under § 523(a)(8), a student debt that is otherwise
nondischargeable is dischargeable if excepting the debt from
discharge would cause undue hardship.  In *Espinosa*, the Court
noted that while the Bankruptcy Court failed to make an undue
hardship, such debts *could* in fact be treated as dischargeable
(upon an undue hardship finding), and that the "failure to find
undue hardship in accordance with § 523(a)(8) is [not] on par
with the jurisdictional and notice failings that define void
judgments that qualify for relief under Rule 60(b)(4)."  559 U.S.
at 273.  The Court, however, did not definitively state that all
nondischargeable debts could be discharged by a creditor's
failure to object to the plan or to appeal a confirmation order;
in fact, the Court specifically stated in a footnote:

> Sections 1328(a) and 523(a)(8) provide that student loan
> debt is dischargeable in a Chapter 13 proceeding if a
> court makes a finding of undue hardship.  In contrast,
> other provisions in Chapter 13 provide that certain other
> debts are not dischargeable under any circumstances.
> *See, e.g.,* §§ 523(a)(1)(B), (C) (specified tax debts);
> § 523(a)(5) (domestic support obligations); § 523(a)(9)

28

> (debts "caused by" the debtor's unlawful operation of a
> vehicle while intoxicated).  We express no view on the
> conditions under which an order confirming the discharge
> of one of these types of debt could be set aside as void.

559 U.S. at 273 n.10.  Courts have interpreted this footnote to
mean that a nondischargeable debt that is nondischargeable under
all circumstances cannot be discharged by a plan that decrees
that the debt is discharged.  *See Florida Dept. of Revenue v.
Diaz (In re Diaz)*, 647 F.3d 1073, 1089-90 (11th Cir. 2011)
(citing footnote 10 in *Espinosa* as requiring that a child support
debt is never dischargeable in a Chapter 13 case); *In re Brown*,
533 B.R. 344, 348-49 (Bankr. M.D. Fla. 2015); *De Boer v. Talsma
(In re Talsma)*, 496 B.R. 828, 835 (Bankr. N.D. Tex. 2013).

However, in *United States v. Philip Morris USA Inc.*, 840
F.3d 844, 851 (D.C. Cir. 2016), the Court of Appeals held:

> Rule 60(b)(4) does not permit relief where a court has
> exceeded its remedial authority.  *Cf. United States v.
> Boch Oldsmobile, Inc.*, 909 F.2d 657, 662 (1st Cir. 1990)
> ("Consent decrees that run afoul of the applicable
> statutes lead to an erroneous judgment, not to a void
> one.").  Such errors are simply not the type of
> fundamental defects the Court had in mind in *Espinosa*.

It follows that, in the District of Columbia Circuit, an order
confirming a plan that erroneously decrees discharge of a debt
that is nondischargeable under § 523(a)(1) cannot be set aside
under Rule 60(b)(4) as void unless there has been a fundamental
defect of a type the Court had in mind in *Espinosa* (such as lack
of required notice).

29

Nevertheless, a provision in an order confirming a Chapter 11 plan that purports to discharge a claim excepted from disharge under § 523 can have no binding effect on the holder of that claim.  Under 11 U.S.C. § 1141(a), "[e]xcept as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind . . . any creditor . . ."  In turn, § 1141(d)(2) provides that "[a] discharge under this chapter [*i.e.*, Chapter 11] does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title."[9]  *See Comput. Task Grp., Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 189 (B.A.P. 9th Cir. 2003) ("The reference to § 1141(d)(2) in § 1141(a) makes it clear that while all creditors are bound by the provisions of a confirmed plan, this binding effect cannot operate to discharge an otherwise nondischargeable debt.").  It follows that the binding effect of the confirmed *Plan* under § 1141(a) did not apply to any provision of the *Plan* purporting to discharge the income taxes owed for 2003 that were nondischargeable under § 523(a)(1)(A).

Section 1141(d)(2) applies not only to plan provisions but also to provisions of a confirmation order purporting to

---

[9]   In contrast, Chapter 13 does not include a provision similar to § 1141(d)(2), "leading to the possibility that an otherwise nondischargeable § 523 debt may be discharged through the terms of a chapter 13 confirmed plan if the creditor fails to object."  *Community First Bank v. Gaines (In re Gaines)*, No. 5:13-AP-07096, 2014 WL 7011134, at *2 (Bankr. W.D. Ark. Mar. 11, 2014) (citing *Espinosa*).

discharge a nondischargeable tax claim.  Section 1141(d)(1)

provides, with an exception in § 1141(d)(2), that "the

confirmation of a plan" (necessarily including the order

confirming the plan) gives rise generally to a discharge.  It

follows that the exception in § 1141(d)(2) applies to provisions

of a confirmation order that attempt to discharge a debt that is

nondischargeable under § 523.  Indeed, § 1141(d)(2) does not

refer to only a discharge in the plan but to "[a] discharge under

this chapter" as not discharging a debt excepted from discharge

under § 523.  It is obvious that "a discharge under this chapter"

necessarily includes any discharge expressly granted by the order

issued under Chapter 11 to confirm the plan.  The bar of

§ 1141(d)(2) against discharging nondischargeable claims cannot

be circumvented by including in the confirmation order a

discharge of a nondischargeable claim.

Decisions of the courts of appeals make clear that any

provision in a plan or the confirmation order purporting to

discharge a claim that is nondischargeable under § 523 has no res

judicata or otherwise binding effect regarding the continuing

right to collect the nondischargeable claim.  For example, in *IRS*

*v. Taylor (In re Taylor)*, 132 F.3d 256, 259 (5th Cir. 1998), a

plan provision stated that all priority tax claims (which are

nondischargeable under § 523(a)(1)(A)) "whether or not now

asserted, are discharged without receiving payment."  The Court

31

of Appeals held that neither res judicata nor § 1141(a) made that

provision binding on the IRS with respect to a nondischargeable

claim.  *Id.* at 261.  *See also DePaolo v. United States (In re*

*DePaolo)*, 45 F.3d 373, 375-76 (10th Cir. 1995) (binding effect of

plan does not apply to a creditor whose claim is

nondischargeable, and the plain language of §§ 1141 and 523

forbid the application of res judicata principles to the holder

of a nondischargeable claim); *United States v. Gurwitch (In re*

*Gurwitch)*, 794 F.2d 584, 585-86 (11th Cir. 1986) (rejecting

arguments that, after confirmation of plan, res judicata, policy

considerations, and equitable estoppel barred collection of

nondischargeable tax claim for which no proof of claim was

filed).[10]  Numerous decisions of lower courts similarly make

clear that a plan or a confirmation order purporting to discharge

---

[10]  *See also Fein v. United States (In re Fein)*, 22 F.3d
631, 633 (5th Cir. 1994) (res judicata effect of plan did not
apply to nondischargeable tax claim); *Grynberg v. United States
(In re Grynberg)*, 986 F.2d 367 (10th Cir. 1993), *cert. denied*,
510 U.S. 812 (1993).

a nondischargeable tax are not binding on the IRS.[11]

The debtors cite *United States v. Victor*, 121 F.3d 1383, 1384 (10th Cir. 1997), as standing for the proposition that if an IRS claim that is subject to a discharge or release under a plan, the IRS is bound by the terms of the confirmed plan and is precluded from enforcing or collecting the claim, except as provided for in that plan. However, *Victor* dealt with a claim of the IRS for so-called "gap interest" that the court held was *not*

---

[11]    *See*, *e.g.*, *In re Gaines*, 2014 WL 7011134, at *2 ("Whether the creditor to whom the debt is owed objects to confirmation of the plan or otherwise participates in the confirmation process is irrelevant—the creditor cannot be bound by terms expressly barred by § 1141(d)(2)."  (Citation and footnote omitted.)); *Newman v. United States (In re Newman)*, 402 B.R. 908, 913 (Bankr. M.D. Fla. 2009) ("[A] taxing authority may collect a nondischargeable tax liability following confirmation of a chapter 11 plan, even if it failed to object to the treatment provided for its claim under the plan."); *Sage v. IRS (In re Sage)*, No. 01-3288 (JBS)*, 2002 WL 221099, *6 (D.N.J. Jan. 23, 2002) ("the principles of res judicata do not apply to bar the IRS's [nondischargeable] claim"); *California State Board of Equalization v. Ward (In re Artisan Woodworkers)*, 225 B.R. 185, 190-91 (B.A.P. 9th Cir. 1998); *McConahey v. United States (In re McConahey)*, 192 B.R. 187, 191 (Bankr. S.D. Ill. 1996); *Goodnow v. Adelman (In re Adelman)*, 90 B.R. 1012, 1018 (Bankr. D.S.D. 1988).

excepted from discharge under 11 U.S.C. § 523(a)(1)(A),[12] and
thus § 1141(d)(2) did not bar discharge of the claim.  *Victor*
does not stand for the proposition that a plan provision that
erroneously declares a nondischargeable tax claim discharged is
binding on the IRS despite § 1141(d)(2).

The Court of Appeals in *Victor* also held that the IRS's
claim for so-called gap interest was not recoverable as part of
its allowed secured claim under 11 U.S.C. § 506(b) because the
plan was binding on the IRS and had not provided for payment of
gap interest.  In making that holding, *Victor* did not hold that
despite § 1141(d)(2), a plan could be binding on the IRS with
respect to a plan provision that declares discharged a
nondischargeable tax claim.

The debtors also rely on *In re Otero Cty. Hosp. Ass'n, Inc.*,
560 B.R. 551, 563 (Bankr. D.N.M. 2016), as holding that a party
with notice of a bankruptcy case is bound by the provisions of a

---

[12]   In *Victor*, 121 F.3d at 1386, the IRS held allowed
secured prepetition tax claims.  The Court of Appeals held that
the claim for gap interest owed on those claims was of a
dischargeable character.  It reasoned that the claim was not
nondischargeable under 11 U.S.C. § 523(a)(1)(A) as a debt for
"tax of a kind and for the periods specified in section . . .
507(a)(8)" because § 507(a)(8) only applies to allowed unsecured
claims.  That holding has been soundly rejected by *Gust v. United
States (In re Gust)*, 197 F.3d 1112 (11th Cir. 1999), on the basis
that it is not the secured or unsecured status of the claim that
counts but whether the claim is for a "tax of a kind" described
in § 507(a)(8).  Here, although the IRS did not file a proof of
claim in this case for the 2003 income tax, § 523(a)(1)(A) made
the claim nondischargeable "whether or not a claim for such tax
was filed or allowed."

confirmed plan.  However, that decision did not address the
effect of §§ 1141(a) and 1141(d)(2) as nullifying any plan
provision declaring discharged a nondischargeable claim.

Accordingly, here the discharge provisions in the *Plan*, as
modified, and in the *Confirmation Order*, and the statutory
discharge arising under 11 U.S.C. § 1141(d)(1), did not effect a
discharge of the IRS's nondischargeable claim for 2003 taxes.  It
follows that the claim for 2003 taxes has not been discharged.

VI

ANY RELEASE OF THE IRS'S NONDISCHARGEABLE
TAX CLAIM IS BARRED BY THE PROHIBITION IN 11 U.S.C.
§ 1141(d)(2) AGAINST DISCHARGING NONDISCHARGEABLE TAXES

Necessarily, any provision in the *Plan* or *Confirmation Order*
providing that the nondischargeable claim for 2003 income taxes
is released amounts to a prohibited discharge of the claim barred
by § 1141(d)(2).  The prohibition of 1141(d)(2) cannot be
circumvented by attempting to rid the debtors of liability by
saying that a nondischargeable debt is "released" instead of
saying that it is "discharged."  *See United States v. Johnston
(In re Johnston)*, No. 2:01-BK-06221 SSC, 2014 WL 5797644, at *3
n.2 (D. Ariz. Sept. 25, 2014) (holding that "[w]hether it is
called a discharge, a satisfaction, a release, an assignment, or
anything else, a Chapter 11 Plan cannot eliminate a debt that

35

Congress determined is absolutely non-dischargeable.").[13]   *See
also Followell v. United States (In re Gurley)*, 335 B.R. 389, 391
(Bankr. W.D. Tenn. 2005) (plan referred to the claim as being
discharged and released, but § 1141(d)(2) preserved IRS's right
to collect nondischargeable claim).[14]   Accordingly, the release
provisions of the *Plan* and *Confirmation Order* here have not
extinguished the nondischargeable claim for 2007 income taxes.

VII

SECTION VIII.F OF THE PLAN DOES
NOT EFFECT A DISCHARGE OF THE IRS'S NONDISCHARGEABLE
CLAIM BASED ON THE IRS'S FAILURE TO FILE A PROOF OF CLAIM
FOR THE CLAIM OR TO TO SEEK LEAVE TO FILE AN AMENDED CLAIM

The debtors argue that the IRS is barred from asserting its
2003 income tax claim by reason of §§ VIII.F, which provides in

---

[13]   Indeed, a discharge has always been viewed as releasing
a debtor from any dischargeable debt as a personal liability.
Section 17 of the Bankruptcy Act, 11 U.S.C. § 35, provided in
relevant part that a discharge "shall release a bankrupt from all
of his provable debts, whether allowable in full or in part,
except such as (1) are due as a tax levied by the United States .
. . ."  The view of the discharge as effecting a release of
liability for a discharged debt has continued under the
Bankruptcy Code.  *See Resorts Int'l, Inc. v. Lowenschuss (In re
Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir.1995) ("Pursuant to 11
U.S.C. § 524(a), a discharge under Chapter 11 releases the debtor
from personal liability for any debts.").

[14]   In *Gurley*, the confirmed plan provided: "The rights
afforded in the Plan and the treatment of all claims and equity
interests therein shall be in exchange for and in complete
satisfaction, discharge, and release of all claims and equity
interests of any nature whatsoever, including without limitation,
any interest accrued on such claims from and after the Petition
Date, against the Debtor or any of her assets or properties."

36

relevant part:

> *F. No Amendments to Claims*
>
> On or after the Confirmation Date, the Holder of a Claim (other than an Administrative Claim or a Professional Claim) must obtain prior authorization from the Bankruptcy Court or the Debtors to file or amend a Claim. Any new or amended Claim (other than a Rejection Claim filed by the Rejection Claim Bar Date) filed after the Confirmation Date without such authorization will not appear on the register of claims in the Chapter 11 Cases and will be deemed Disallowed in full and expunged without any action required of the Debtors or the Reorganized Debtor and without the need for any court order.

The debtors note that the IRS never sought approval from the court, or the debtors, to amend its claim, and the IRS never in fact amended its claim to include the tax debt for 2003. The IRS was not required to include its claim for 2003 in its proof of claim. *See Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji)*, 698 F.3d 231, 237 (5th Cir. 2012) (nothing imposed a legal responsibility on a creditor to include all amounts owed it in its proof of claim). *Accord, In re Gurwitch*, 794 F.2d at 585 ("The Bankruptcy Code makes clear under 11 U.S.C. § 1141(d)(2) that the confirmation of a plan of reorganization does not fix tax liabilities made nondischargeable under 11 U.S.C. § 523." (footnote omitted)). In turn, § 523(a)(1)(A) makes clear that the 2003 income tax debt is not discharged "whether or not a claim for such tax was filed or allowed." Nor was the claim "deemed Disallowed in full and expunged" as the IRS never filed a proof of claim for the 2003 income tax. Even if the IRS had

37

filed a proof of claim for the 2003 income tax, the disallowance

of the claim as untimely would only be for purposes of receiving

distributions under the *Plan*, and would not preclude collection

of the nondischargeable claim.  *See In re Grynberg*, 986 F.2d at

370-71; *In re Hansen*, 576 B.R. 845, 849-50 (Bankr. E.D. Wis.

2017).

VIII

IN ANY EVENT, THE PLAN AS MODIFIED WAS NOT INTENDED TO
DISCHARGE OR RELEASE THE IRS'S NONDISCHARGEABLE CLAIMS

As explored above, regardless of how the *Plan*, as modified,

is interpreted, § 1141(d)(2) operates to make non-binding any

provision in the *Plan*, as modified, attempting to discharge a

nondischargeable claim.  However, I additionally conclude that

the *Plan* was *not* intended to accomplish the improper purpose of

discharging nondischargeable claims.

Chapter 11 plans are essentially new contracts and are

interpreted under the rules of contract construction.  *In re*

*3109, LLC*, No. 10-00757, 2014 WL 1655415, at * 1 (Bankr. D.D.C.

April 25, 2014).  The *Governing Law* provision in § I.D of the

*Plan* provides:

> Unless a rule of law or procedure is supplied by federal
> law (including the Bankruptcy Code and the Bankruptcy
> Rules) or unless otherwise specifically stated, the laws
> of the District of Columbia, without giving effect to
> conflicts of law provisions, shall govern the rights,
> obligations, construction and implementation of this Plan
> . . . .

38

Courts "are obligated to construe contracts that are potentially
in conflict with a statute, and thus void as against public
policy, where reasonably possible, to harmonize them with the
statute." *Cruz v. State Farm Mut. Auto. Ins. Co.*, 648 N.W.2d
591, 597 (Mich. 2002). *See also Ins. Co. of N. Am. v. D.C.*, 948
A.2d 1181, 1191 (D.C. 2008). In other words, "when a contract is
fairly open to two constructions, one of which makes it lawful
while the other renders it unlawful, the former should be
adopted." *Leiken v. Wilson*, 445 A.2d 993, 998 (D.C. 1982)
(citations omitted). "Ambiguous plans should be interpreted to
comply with the Bankruptcy Code." *NM Enters., Inc. v. Harrington
(In re Flying Star Cafes, Inc.)*, 568 B.R. 129, 137 (Bankr. D.N.M.
2017) (citations omitted). The result is that, if there is
ambiguity in the *Plan*, it must be interpreted in a fashion that
it complies with 11 U.S.C. § 1141(d)(2), which provides that a
discharge under Chapter 11 of the Bankruptcy Code "does not
discharge a debtor who is an individual from any debt excepted
from discharge under section 523 of this title."

In contending that their 2003 income tax debt has been
discharged, the debtors rely on two provisions of the *Plan*, as
modified, regarding discharge, to wit, § X.B. *(Discharge of
Claims and Cancellation of Equity Interests)*, § X.C (*Binding
Effect*), and § X.F. (*Release by Holders of Claims and Interests*).
For the reasons stated below, I find that as a matter of contract

interpretation, these provisions were not intended to discharge the debtors' 2003 income tax debt.

The District of Columbia "adheres to an 'objective' law of contracts, meaning 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake." *Dyer v. Bilaal*, 983 A.2d 349, 354-55 (D.C. 2009) (quoting *DSP Venture Group, Inc. v. Allen*, 830 A.2d 850, 852 (D.C. 2003)). The court will "examine the document on its face, giving the language used its plain meaning." *Tillery v. D.C. Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006), citing *Sacks v. Rothberg*, 569 A.2d 150, 154 (D.C. 1990). A contract is interpreted as a whole, giving effective meaning to all of its terms. *Wilson v. Hayes*, 77 A.3d 392, 402 (D.C. 2013). However, one provision of the contract may not be read to alter the plain meaning of another. *Id.* The court must avoid an interpretation that would make language under the contract surplusage. *District of Columbia v. D.C. Pub. Serv. Comm'n*, 963 A.2d 1144, 1157 (D.C. 2009). Where a contract is ambiguous, "then external evidence may be admitted to explain the surrounding circumstances and the position and actions of the parties at the time of contracting." *Rivers & Bryan, Inc. v. HBE*

40

*Corp.,* 628 A.2d 631, 635 (D.C. 1993) (citations omitted).  A

"contract's meaning will be construed strongly against the

drafter" to resolve any further ambiguities after all parole

evidence has been considered.  *Dyer,* 983 A.2d at 355.

Section X.B of the *Plan* makes clear that a discharge would

not include nondischargeable debts.  The first sentence of § X.B.

states that the rights afforded in the *Plan* "shall discharge . .

all pre-Effective Date debts and Claims . . . to the fullest

extent permitted by section 1141 of the Bankruptcy Code."  As

noted already, § 1141(d)(2) does not permit the discharge arising

under a confirmation order by reason of § 1141(d)(1) to apply to

debts excepted from discharge by 11 U.S.C. § 523.  In providing

that the discharge shall apply "to the fullest extent permitted

by section 1141," § X.B. was intended to preserve, as set forth

in § 1141(d)(2), the nondischargeability of debts except from

discharge in 11 U.S.C. § 532.  Accordingly, the *Plan* specifically

excluded the debt owed the IRS for 2003 income taxes and interest

thereon, excepted from discharge by § 523(a)(1)(A), from being

discharged.

Even if that language could be viewed as ambiguous, courts,

as noted previously, "are obligated to construe contracts that

are potentially in conflict with a statute, and thus void as

against public policy, where reasonably possible, to harmonize

them with the statute."  *Cruz,* 648 N.W.2d at 597.  The provision

41

that the discharge shall apply "to the fullest extent permitted
by section 1141" ought to be interpreted consistent with 11
U.S.C. § 1141(d)(2) as barring the debtors' 2003 income tax debt
from being discharged.

The second sentence of § X.B provided in relevant part:

> Except as provided in any other provision of the Plan, on
> the Effective Date, . . . all Claims against the Debtors
> . . . shall be and shall be deemed to be, satisfied,
> discharged and terminated, and all Holders of Claims
> against any of the Debtors shall be precluded and
> enjoined from asserting against the Debtors any other or
> further . . . Claim against any of the Debtors based upon
> any claim, right, act, omission, transaction, or other
> activity of any kind or nature that occurred prior to the
> Effective Date, whether or not such Holder has filed a
> proof of claim or proof of equity interest.  . . .

Although viewed in isolation this language would deem the IRS's
nondischargeable claim to be discharged, the sentence must not be
read in isolation.  The language in the first sentence,
discharging debts to the fullest extent permitted by section 1141
of the Bankruptcy Code, would have been surplusage if this second
sentence were interpreted as discharging the IRS's
nondischargeable claim for 2003.  Because of the court's
obligation to avoid an interpretation that would make language
under the contract surplusage, I interpret the second sentence of
§ X.B as limited to the debts dischargeable under § 1141 and as
not including debts excepted from discharge by the first sentence
of § X.B.

That this is the proper interpretation of § X.B is made

evident by the language of X.F (*Release by Holders of Claims and Interests*) prior to its modification.  Prior to being modified by the modification presented at the confirmation hearing (of which the IRS was given no notice prior to confirmation), § X.F provided in relevant part:

> **To the extent permitted by applicable law** and approved by the Bankruptcy Court, on and after the Effective Date, each Holder of a Claim . . . shall be deemed to have . . . **released and discharged** the Released Parties from any and all Claims . . .  that such Entity is entitled to assert based . . . upon any act, omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date . . . .

(Emphasis added.)  Applicable law included § 1141(d)(2), which barred discharge of the IRS's income tax claim for 2003. Accordingly, § X.F, prior to being modified, clearly evidenced that the IRS's income tax claim for 2003 was not being discharged, as that would not be "permitted by applicable law," and made clear that § X.B was not intended to discharge the IRS's tax claim for 2003, otherwise there would be conflicting provisions in the *Plan*.  Although § X.F was modified to eliminate the opening clause ("To the extent permitted by applicable law and approved by the Bankruptcy Court"), that does not alter the fact that the prior version shed light on the intention of § X.B with respect to debts that § 1141(d)(2) barred from being discharged.

There was no suggestion or disclosure that in modifying § X.F, the debtors were attempting to make X.B effective to

43

discharge nondischargeable tax claims by removing the opening clause in § X.F that made clear that nondischargeable claims were *not* to be discharged.  If the debtors intended in deleting that opening language to have the *Plan* provide that the IRS's nondischargeable claim *was* discharged, they were required to give the IRS notice of the opportunity to object to the modification. See  11 U.S.C. § 1128(a) and Fed. R. Bankr. P. 2002(b)(2).  Their failure to give such notice reflects that they did not intend to alter the meaning of § X.B.  Moreover, that lack of notice renders the modification ineffective under such decisions as *Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp., Inc.)*, 810 F.2d 270, 278 (D.C. Cir. 1987)*,* as discussed below more thoroughly with respect to the injunctive provisions of the *Plan* and the *Confirmation Order*.

Section X.C. (*Binding Effect*) provided in relevant part: "Except as otherwise provided in sections 1141(d)(3) and (d)(5) of the Bankruptcy Code, on and after Confirmation Date, and subject to the Effective Date, the provisions of the Plan shall bind any Holder of a Claim . . . ."  Paragraph 7 of the *Confirmation Order* contained identical language.  The debtors read as significant that this language specifically includes §§ 1141(d)(3) and (d)(5), but does not include § 1141(d)(2), which excepts from a chapter 11 discharge nondischargeable claims under § 523.  However, there is no significance in the omission

44

of mention of § 1141(d)(2).  The language in § X.C. of the
*Plan* and in paragraph 7 of the *Confirmation Order* is only making
clear that while the debtors are entitled to a discharge under
the *Plan*, a discharge would not be granted until the debtors have
qualified for a discharge under § 1141(d)(5) and that by reason
of § 1141(d)(3) one of the corporate debtors, who was ceasing to
conduct business and whose assets were being liquidated, would
not receive a discharge.[15]

Nor can § X.F, as modified, be deemed to have resulted in
the debtors' being discharged from their debt for 2003 taxes owed
to the IRS.  If the revised § X.F. is read to create a discharge
of nondischargeable debts, § X.B. would be inconsistent with
that.  If it is possible, the court must avoid interpreting a
provision in the *Plan* that would make another provision
ineffective, and, here, it is possible to interpret § X.F as
*not* discharging nondischargeable claims.

The debtors first argument regarding § X.F points to the
exception in § X.F, both before and after it was modified, for

---

[15]  Section 1141(d)(3) does not apply to the Barnes, but to
corporate debtors who joined in presenting the *Plan* as a joint
plan.  Section 1141(d)(3) provides that a corporation will not
receive a discharge if it has a liquidating plan and the company
no longer engages in business upon consummation of the plan.
Section 1141(d)(5), which does apply to the Barnes, is a timing
provision that makes clear that, with an exception of no
relevance, an individual debtor is not discharged "until the
court grants a discharge on completion of all payments under the
plan."

claims "for fraud, gross negligence, willful misconduct or
criminal conduct."  The debtors argued at the hearing on their
*Motion* that the failure of this exception to include
nondischargeable tax claims demonstrates that such tax claims
were *not* to be excepted from the release.  Specifically, they
note that 11 U.S.C. § 523(a)(2) and (6) set forth exceptions to
discharge for certain debts arising from fraud and certain debts
based on willful and malicious injury, and they argue that the
failure of the quoted exception to the release to include tax
claims that are nondischargeable under § 523(a)(1) demonstrates
that such nondischargeable tax claims are *not* excepted from the
release.  However, the release in § X.F applied to all Released
Parties, which included, under § I.A.67, as it had prior to being
modified, "the Liquidating Trustee and the Distribution Agent."
Because the Liquidating Trustee and the Distribution Agent were
not receiving discharges, they would have wanted the protection
of a release for claims based on their performance in carrying
out the *Plan*, and the release language included the typical
exception to the release in the case of claims "for fraud, gross
negligence, willful misconduct or criminal conduct," which is
typical of releases for nondebtor parties.  *See In re Dynegy
Inc.*, 486 B.R. 585, 594 (Bankr. S.D.N.Y. 2013) (such release
language "substantially conforms to the language that has become
standard in [the Second] Circuit" for such nondebtor releases).

46

That exception to the release does not demonstrate an intent to decree the IRS's nondischargeable claims are released.

The debtors further point to the modified language of § X.F as literally saying that the IRS's claims are all discharged and released.  Section X.F remained titled "(*Release by Holders of Claims and Interest*, signifying that its focus was not on discharging of claims.  The modification of § X.F to removed the opening clause, "To the extent permitted by applicable law and approved by the Bankruptcy Court," which barred treating the IRS's nondischargeable claims from being discharged (because § 1141(d)(2) barred decreeing those claims discharged).  With that opening clause removed, § X.F now provided in relevant part in its opening sentence and its final sentence that:

> On and after the Effective Date, each Holder of a Claim . . . shall be deemed to have . . . released and discharged the Released Parties from any . . . Claims . . . that such Entity is entitled to assert based . . . upon any . . . occurrence taking place on or prior to the Effective Date . . . .  The release described above shall be enforceable as a matter of contract against **any Holder of a Claim,** Interest or expense **timely notified of the provisions of the Plan.** . . .

(Emphasis added.)  "The release described above" meant the entirety of the provisions in § X.F (*Release by Holders of Claims and Interests*), and as thus covering the discharge of claims effected by the release in the above-quoted opening sentence of § X.F.  Only creditors "timely notified" would have their claims released and discharged by the opening sentence of § X.F.

47

The IRS was not timely notified of the modifications to § X.F of the *Plan*. If the modifications to § X.F effected a change adverse to the IRS (by eliminating the language limiting the discharge "[t]o the extent permitted by applicable law"), the debtors were required to give the IRS notice, as required by 11 U.S.C. § 1128(a) and Fed. R. Bankr. P. 2002(b)(2), of the opportunity to object to confirmation of the *Plan* as modified. The debtors failed to give such notice. The IRS thus cannot be deemed to have been timely notified of the provisions of § X.F as modified. It follows that the IRS cannot be viewed as a party against whom the modifications of § X.F (*Release by Holders of Claims and Interests*) can be enforceable as a matter of contract: it was not a "Holder of a Claim . . . timely notified of the provisions of the Plan" contained in the modification to § X.F.

That § X.F ought to be interpreted that way is reinforced by the debtors, at the confirmation hearing and later, having characterized the modifications as addressing the United States Trustee's objection to confirmation and by the characterization of the changes in the *Confirmation Order*. Nothing in the *Confirmation Order* suggested that the modifications contained in § X.F of the *Plan* had been made to address the IRS's claim for 2003 income taxes. The *Confirmation Order* makes clear that the whole purpose of the revision to § X.F. was to address the objections of the United States Trustee. The Findings of Facts

section of the *Confirmation Order* says specifically: "The release

contained in Article X of the Plan, as modified below in response

to the Objection to the Plan filed by the Office of the United

States Trustee . . . ."  Additionally, paragraph 13 of the

*Confirmation Order* says:

> The release and exculpation provisions contained in
> Sections X.F. and X.G., and the definition of "Released
> parties" in Section I.A.67. of the Plan are restated in
> their entirety as follows in light of the objection of
> the United States Trustee to the Plan, with the restated
> release provisions being hereby approved in all respects
> . . . .

(Emphasis added).  That weighs in favor of interpreting the *Plan*

as not intended to change the *Plan* into one discharging and

releasing the IRS's claim for 2003 taxes.  The debtors were in a

position to realize that the IRS reasonably would have expected

its nondischargeable claim for 2003 taxes, which was clearly to

remain not discharged by the *Plan* prior to its modification, was

to remain unaffected by the *Plan* as modified (because, otherwise,

the IRS was entitled to receive Rule 2002(b)(2) of the

opportunity to object to confirmation of the *Plan* as modified).

In that regard, this case is similar to *Schechter v.*

*Cytodyne Technologies (In re Nutraquest)*, No. 07-1292, 2007 WL

3311725 (Bankr. D.N.J. Nov. 5, 2007).  In *Nutraquest*, Jason

Schechter brought a personal injury lawsuit against the debtor,

but because the alleged tort happened while the debtor was in

bankruptcy, Schechter's plan was treated as an administrative

claim.  The debtor modified its plan only days before the
confirmation hearing and included language in the release
provision of its plan that could be read to release Schechter's
claim.  Schechter was not notified of the modification or asked
to accept any modification.  A "black-lined" copy of the modified
plan was provided to Schechter's counsel at the confirmation
hearing.  *Nutraquest*, 2007 WL 3311725, at *15.  The debtor made
multiple representations to the court that the modifications
would "not adversely impact any creditor."  *Id.* at *2.  The court
confirmed the plan, and several months later, the debtor sought
to dismiss Schechter's suit under the release provision of the
plan.  The court held that given the context of the modification,
that it was made only a few days before confirmation, no notice
was given to Schechter, Schechter was not asked to accept the
plan, and the multiple representations that no creditors would be
adversely impacted, the court held that the plan could not be
read as a release of Schechter's claim.  *Id.* at 14.

Similar to *Nutraquest*, the modifications here were made on
the day of the confirmation hearing, and no notice was provided
to the IRS, nor was the IRS solicited for its acceptance.  The
debtor represented that the provision was the product of
negotiations with the United States Trustee to address the United
States Trustee's objections.  No mention was made that the
release and discharge provisions would extend any further than

50

the release and discharge provisions in the original version of
the *Plan*, or that any creditor might be adversely impacted by the
modification of the release.   Moreover, unlike *Nutraquest*, where
Schuchter's attorney was at the confirmation hearing to view the
"black-line" of the changes by the modification, here the IRS was
not represented at the confirmation hearing, and the IRS did not
receive the blackline of modified sections of the *Plan*.   All of
these factors strongly suggest that the sole purpose of the
modification was to address the Untied States Trustee's concerns,
and the modification should not be read to extend any further
than to address the United States Trustee's concerns.

    Finally, having reviewed all the evidence, I believe it is
appropriate to construe the *Plan* against the drafter, the
debtors, to resolve any remaining doubt as to whether the *Plan*,
as modified, discharges the IRS's nondischargeable 2003 income
tax claim.[16]

---

    [16]  Because the modification of § X.F was not intended to
discharge the IRS's nondischargeable claims, it is unnecessary to
explore reformation of the modification of § X.F based on the
apparent mutual intent of the United States Trustee and the
debtors at the confirmation hearing that the modification would
not be adverse to creditors and was only addressing the United
States Trustee's concerns.   *See Lumpkins v. CSL Locksmith, LLC*,
911 A.2d 418, 423–24 (D.C. 2006).   *See also Ins. Co. of N. Am. v.
D.C.*, 948 A.2d at 1191; *In re Brown*, 369 B.R. 595, 604 (Bankr. D.
Or. 2006) (applying reformation to a confirmed plan).   Nor is it
necessary to consider whether the doctrine of unilateral mistake
could apply.   *See Flippo Const. Co. v. Mike Parks Diving Corp.*,
531 A.2d 263, 272 (D.C. 1987) (applying §§ 153 and 154 of the
*Restatement (Second) of Contracts*).

51

In any event, as explored below with respect to the injunctions in the *Plan*, if the modified version of § X.F. is treated as discharging the IRS's nondischargeable claim, the lack of adequate notice to the IRS regarding the modification makes the modification unenforceable.

### VIII

### THE INJUNCTIONS IN THE
### PLAN, AS MODIFIED, AND IN THE CONFIRMATION
### ORDER DO NOT APPLY TO THE CLAIM FOR 2003 INCOME TAXES

As noted above, the discharge injunction of § 524(a)(2) does not apply to the claim for 2003 income taxes. Nevertheless, the debtors contend that other provisions of the *Plan* and the *Confirmation Order* enjoin the IRS from collecting the income tax for 2003. However, the provisions to which they point did not suffice to enjoin collection of the claim.

### A

### § X.E OF THE PLAN

The *Plan*'s § X.E. (*Injunction Against Interference with Plan*) specifically provides in bold letters that:

**Upon the entry of the Confirmation Order with respect to the Plan, all Holders of Claims and Equity Interests and other parties in interest, along with their respective present or ormer employees, agents, officers, directors or principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan.**

I assume, without the necessity of deciding, that the debtors are

correct that the IRS was enjoined under this plan injunction from collecting on its 2003 income tax claim, but that was only during the life of the plan injunction, which was limited to the period of implementation or consummation of the *Plan*.[17]  As of August 10, 2017, the debtors had completed their payments under the *Plan*, and, as a result, "the implementation and consummation of the Plan" had concluded.  Accordingly, as of August 10, 2017, the plan injunction in § X.E had come to an end.

B

THE INJUNCTION IN PLAN § X.F

The modification of § X.F of the *Plan* included two new sentences at the end that provided:

> The release described above shall be enforceable as a matter of contract against any Holder of a Claim, Interest or expense timely notified of the provisions of the Plan.  Holders of Claims, Interests and expenses **shall be enjoined** from commencing or continuing any Cause of Action, employment of process or act to collect,

---

[17]  However, § XIV.D of the *Plan* ("*Term of Injunction or Stay*") provided:

> Unless otherwise provided under the Plan, all injunctions or stays arising under section 105 or 362 of the Bankruptcy Code, any order entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such order.

I will assume, without deciding, that the lack of a specific date in § X.E does not preclude treating the plan injunction as lasting until the date of completion of implementation and consummation of the *Plan*.

offset or recover any Claim, Interest or expense that is
released as provided herein.

(Emphasis added.)  For the reasons that follow, these provisions
did not operate to enjoin the IRS's collection of the income
taxes for 2003.

> 1.   *Permanently Enjoining Collection of a
>       Nondischargeable Claim is, Under 11 U.S.C.
>       § 1141(d)(2), an Ineffective Attempt to Discharge
>       the Nondischargeable Claim.*

Permanently enjoining collection of a nondischargeable debt
would amount to discharging the debt, that is, making it
uncollectible.  Such a provision is non-binding of the holder of
a nondischargeable claim by reason of 11 U.S.C. § 1141(a)'s
exception to the binding effect of a plan in the case of
nondischargeable claims that 11 U.S.C. § 1141(d)(2) bars from
being discharged.

Accordingly, any attempt in the modifications to § X.F to
enjoin collection of the nondischargeable claim for 2003 income
taxes is ineffective by reason of 11 U.S.C. § 1141(d)(1).  Some
decisions hold that a bankruptcy court may exercise its equitable
powers pursuant to 11 U.S.C. § 105(a) to approve a Chapter 11
plan that **temporarily** enjoins collection of nondischargeable debt
without running afoul of 11 U.S.C. § 1141(d)(2).  However, those
decisions dealt with plans under which eventual collection of the
full amount of the nondischargeable claim was not being barred.
*See In re Brotby*, 303 B.R. at 190; *In re Mercado*, 124 B.R. 799,

54

801-02 (Bankr. C.D. Cal. 1991).  Those decisions are not
inconsistent with the proposition that in light of 11 U.S.C.
§ 1141(d)(2), there is no authority to **permanently** enjoin the
collection of a nondischargeable tax.  Indeed, here, I have
assumed that § X.E of the *Plan* **temporarily** enjoined the
collection of the nondischargeable income tax claim for 2003, but
it implicitly evidenced that upon the administration of the *Plan*
being completed, collection of nondischargeable taxes would not
be **permanently** enjoined.

As discussed in part V, a plan's release of a
nondischargeable tax claim is ineffective by reason of
§ 1141(d)(2) to render the IRS's nondischargeable income tax
claim for 2003 uncollectible.  The same is true when a plan
attempts to permanently enjoin the collection of the
nondischargeable tax claim.  Use of the word "enjoined" cannot
alter the fact that by reason of 11 U.S.C. § 1141(d)(2) the IRS's
nondischargeable tax claim cannot be treated as discharged and
**permanently** uncollectible.  *See In re Johnston*, 2014 WL 5797644,
at *3 n.2 (holding that "[w]hether it is called a discharge, a
satisfaction, a release, an assignment, or anything else, a
Chapter 11 Plan cannot eliminate a debt that Congress determined
is absolutely non-dischargeable.").

2.   *Proper Interpretation of the Modifications Demonstrates That Any Injunction in § X.F Did Not Apply to the IRS's Nondischargeable Tax Claim*.

As discussed earlier, the modification of § X.F release provisions with respect the discharge of claims was not effective as to the IRS's nondischargeable claim because § X.F was "enforceable as a matter of contract against any Holder of a Claim . . . timely notified of the provisions of  the Plan," and the IRS was not timely notified of the modification.  The same is true of the modification of § X.F, *providing for the first time*, that "Holders of Claims . . . shall be enjoined from commencing or continuing any Cause of Action, employment of process or act to collect, offset or recover any Claim . . . that is released as provided herein."  The debtors did not give notice to the IRS that this change was being made.  This new provision was thus not effective as to the IRS because it was "not timely notified of the provisions."  Moreover, as discussed with respect to the discharge language in the modifications of § X.F, the debtors' conduct in presenting the modifications and describing them in the *Confirmation Order* is evidence of an intention not to alter the treatment of the IRS's nondischargeable claim.

3.   *Failure of the Debtors to Give Notice under 11 U.S.C. § 1128(a) and Fed. R. Bankr. P. 2002(b)(2), 2002(c)(3), and 3016(c) of the Injunction Provision in § X.F Renders it Ineffective*.

If the modification to § X.F had imposed an injunction materially and adversely affecting the rights of any creditors,

56

then the provisions of 11 U.S.C. § 1128(a) and Fed. R. Bankr. P.
2002(b)(2), 2002(c)(3), and 3016(c) would have required
dissemination to those creditors of a new version of the *Plan* as
modified with notice of the opportunity to object to the *Plan* as
modified, with conspicuous notice that an injunction was being
sought, and with the injunction appearing in the *Plan* in
conspicuous language.[18]  The IRS was not given any such notice.
As noted previously, notice cannot be treated as a non-issue
based on the modifications having been announced at the
confirmation hearing, as occurred in *In re Nat'l Truck Funding*,
588 B.R. at 179, because the IRS was not represented at the
confirmation hearing.  For reasons explored below, the lack of
proper notice of any modifications adverse to the IRS makes those
modifications void as to the IRS.

It is of course generally true that an order confirming a
plan can have binding effect against a creditor, but such effect
is limited to cases in which the creditor had a fair opportunity
to defend against entry of the order.  *See Stoll v. Gottlieb*, 305
U.S. 165, 172 (1938) ("After a party has his day in court, with
opportunity to present his evidence and his view of the law, a
collateral attack upon the decision as to jurisdiction there

---

[18]   Further, by reason of 11 U.S.C. § 1127(c) and Fed. R.
Bankr. P. 3019, any material and adverse changes might have
required a new disclosure statement eliciting new voting on the
*Plan* under 11 U.S.C. § 1125.

rendered merely retries the issue previously determined.  There

is no reason to expect that the second decision will be more

satisfactory than the first.").  "The statutory command for

notice embodies a basic principle of justice—that a reasonable

opportunity to be heard must precede judicial denial of a party's

claimed rights." *City of New York v. New York, N. H. & H. R.

Co.*, 344 U.S. 293, 297 (1953).  "[E]ven creditors who have

knowledge of a reorganization have a right to assume that the

statutory 'reasonable notice' will be given them before their

claims are forever barred." *Id.* As noted in *In re Auto-Train*,

810 F.2d at 278, the requirement of adequate notice "breaks down

into two elements.  First, the notice must be given in such a

manner that it is reasonably likely to reach its intended

audience.  Second, the content of the notice must reasonably

inform the recipient of the nature of the upcoming proceeding.

Failure to meet either element renders the notice defective."

(Citations omitted.)

As one court noted in a case similar to this one:

> The Supreme Court in *Espinosa* noted that lack of notice
> can make a judgment void.  *See Espinosa*, 559 U.S. at
> 273-74.  While the IRS does not have a constitutional
> right to due process, *U.S. v. Cardinal Mine Supply, Inc.*,
> 916 F.2d 1087, 1090 (6th Cir. 1990), it is "a basic
> principle of justice . . . that a reasonable opportunity
> to be heard must precede judicial denial of a party's
> claimed rights," *U.S. v. State Street Bank & Trust Co.
> (In re Scott Cable Commc'ns, Inc.)*, 259 B.R. 536, 543 (D.
> Conn. 2001).  Thus, "courts have construed that the
> notice requirements of the bankruptcy code apply to 'all
> creditors,' vesting the government 'with a right akin to

58

> due process.'" *U.S. v. Hairopoulos (In re Hairopoulos)*,
> 118 F.3d 1240, 1244 n. 3 (8th Cir. 1997) (quoting *In re
> Interstate Cigar Co.*, 150 B.R. 305, 309 (Bankr. E.D.N.Y.
> 1993)).  The debtor's Chapter 13 plan could not possibly
> have given sufficient notice to the IRS that § 1328(a)(2)
> would not apply and that the nondischargeable tax debt
> would be discharged.

*In re Moore*, No. 08-40118-JTL, 2013 WL 4017936, at *11 (Bankr.

M.D. Ga. Aug. 6, 2013).

The requirement that reasonable notice and opportunity for

hearing be afforded the party against whom relief is sought is

built into the rules governing bankruptcy cases,[19] and, as noted

in *In re Auto-Train*, 810 F.2d at 278, "closely parallels the

constitutional minimum, articulated in *Mullane v. Central Hanover

Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950),

requiring that notice be 'reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of

the action and afford them an opportunity to present their

objections.'  *Id.* at 314, 70 S.Ct. at 657."

As noted in *In re Pettibone Corp.*, 151 B.R. 166, 172-73

(Bankr. N.D. Ill. 1993):

> "Reasonable notice" is defined by the Supreme Court as
> "notice     reasonably    calculated    under    all    the

---

[19]   The confirmation of a plan is a contested matter, with
its own rules governing giving adequate notice to parties against
whom relief is sought.  Those notice requirements are designed to
achieve the same outcome that is required when the rules do not
specify the required form of notice in a contest matter, namely,
as set forth in Fed. R. Bankr. P. 9014(a), that "reasonable
notice and opportunity for hearing . . . be afforded the party
against whom relief is sought."

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* [*v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)]. [Other citations omitted.] *Cf. Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976) (the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner). This Court must look at the totality of the circumstances in determining whether notice was reasonable. *People ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir. 1989). One circumstance to consider in evaluating the sufficiency of notice is whether alleged inadequacies in the notice prejudiced the creditor. *Id.* Another circumstance to consider is whether notice was given to the creditor in time for it to take meaningful action in response to the impending deprivation of its rights. *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978); *Armstrong v. Manzo*, [380 U.S. 545, 551-52 (1965)]; *Aacen v. San Juan County Sheriff's Dept.*, 944 F.2d 691, 696-97 (10th Cir. 1991); *Chicago Cable Communications* [*v. Chicago Cable Commission*, 879 F.2d 1540, 1545 (7th Cir. 1989)] ("Adequate notice both apprises the individual of the hearing and permits adequate preparation to present objections").

There was no notice to the IRS of the modifications to the *Plan* that the debtor was seeking, and thus it was denied the opportunity to object to the modifications if they were adverse to it. The IRS was not alerted in time for it to take meaningful action in response to any impending deprivation of its rights under 11 U.S.C. § 1141(d)(2) (if a plan can deprive a creditor of the protections of § 1141(d)(2)) via an injunction barring it from collecting its nondischargeable claim.

The IRS is not bound by any modifications to the *Plan* that were adverse to it and of which it was not given notice of the opportunity to object to approval of the modifications.

*See In re Auto-Train Corp.*, 810 F.2d at 278–79; *Reliable Elec.
Co. v. Olson Const. Co.*, 726 F.2d 620 (10th Cir. 1984) (creditor,
which was denied opportunity to comment on plan, was denied due
process, and was not bound by the confirmed plan); *In re
CareMatrix Corp.*, 306 B.R. 478, 486 (Bankr.D.Del.2004)
(recognizing that "when a creditor does not receive adequate
notice, the creditor is not bound by the confirmation order")
(citations omitted); *In re Kewanee Boiler Corp.*, 297 B.R. 720,
730 (Bankr. N.D. Ill. 2003) ("A creditor's claim cannot be
subjected to a confirmed plan that it had no opportunity to
dispute.").

Moreover, even if the modifications had been sent to the IRS
in advance of the confirmation hearing, and the modifications
sought to impose an injunction "against conduct not otherwise
enjoined under the Code," Fed. R. Bankr. P. 2002(b)(3)(A) would
have required that notice of the hearing on confirmation of the
*Plan* as modified include "in conspicuous language (bold, italic,
or underlined text) a statement that the plan proposes an
injunction" and Fed. R. Bankr. P. 3016(c) would have required
that injunctive language in the modifications to § X.F be set
forth in "conspicuous language (bold, italic, or underlined
text)."  The debtors did not comply with those requirements,
which govern what is the reasonable notice required regarding an
injunction "against conduct not otherwise enjoined under the

Code."

As noted in *In re Auto-Train, Inc.*, 810 F.2d at 278, the requirement of adequate notice "breaks down into two elements. First, the notice must be given in such a manner that it is reasonably likely to reach its intended audience.  Second, the content of the notice must reasonably inform the recipient of the nature of the upcoming proceeding.  Failure to meet either element renders the notice defective."  (Citations omitted.)[20] Accordingly, even if the IRS had been sent the modifications prior to the confirmation hearing, the **content** of such notice of the modifications would not have reasonably notified the IRS of the nature of the modifications as including an injunction.  The injunctive language was not intended to create, and, in any event, could not create, an injunction independent of any injunctions arising under the Bankruptcy Code because (unlike in § X.E of the *Plan*) the injunction was not set forth in conspicuous language and there was no conspicuous notice that an injunction was being sought.

In failing to comply with the notice requirement of Rule 2002(c)(3), and in failing to set forth the injunction in § X.F

---

[20]   In *Auto-Train*, the Court of Appeals held that notice to creditors lacked content reasonably informing the recipients of the nature of the proceeding leading to a *nunc pro tunc* order, and accordingly a creditor's failure to appeal the *nunc pro tunc* order did not cause collateral estoppel to apply to bar its attacking the order upon which the trustee relied in pursuing a preference action against it.

in "conspicuous language (bold, italic, or underlined text)" as
required by Rule 3016(c), the injunction did not operate as an
injunction "against conduct not otherwise enjoined under the
Code," and must be viewed as limited to conduct enjoined by the
discharge injunction of § 524(a)(2). *See Kelleher v. Nat'l Asset
Loan Mngt., Ltd. (In re Shelbourne North Water Street L.P.)*, 556
B.R. 874, 883 (Bankr. N.D. Ill. 2016) (injunction could not apply
to creditor by reason of plan's failure to comply with the
requirement of Rule 3016(c)). *See also In re Manchester Gas
Storage, Inc.*, 309 B.R. 354, 369 n.10 (Bankr. N.D. Okla. 2004),
stating:

> If the Debtors had intended Article V(B)(6) of the Plan
> to enjoin parties in interest from exercising their right
> to object to claims, notice to parties in interest that
> voting for the Plan would result in such an abridgement
> of rights was insufficient.  See Fed. R. Bankr. P.
> 2002(c)(3) (if a plan proposes to enjoin conduct not
> otherwise enjoined by the Code, the notice of a
> confirmation hearing on the plan must advise of nature of
> the proposed injunction and the parties to be enjoined in
> conspicuous language (bold, italicized or underlined
> text)).

The debtors rely on *Otero County Hospital* in arguing that
because the IRS received notice of the bankruptcy case and
participated in the case, the injunctions in the *Plan* and
*Confirmation Order* are binding on the IRS.  However, *Otero County
Hospital* in fact demonstrates why the injunctions here are not
binding on the IRS.  In *Otero County Hospital*, 560 B.R. at 556, a
two-page notice under Rule 2002(b)(2) of the confirmation hearing

gave conspicuous notice in boldface type that an injunction was being sought and gave notice of the bar date for objecting to the plan. Moreover, the notice in that case was sent to the affected creditors. Here, the IRS was not sent notice that the debtors were seeking the injunction in the modifications to § X.F of the *Plan* and even if the IRS had been sent the modifications, they did not give conspicuous notice that an injunction was being sought.

In sum, the debtors' failure to give reasonable notice to the IRS of the modification of § X.F makes the modification unenforceable against the IRS.

C

THE INJUNCTION IN PLAN § X.B

Section X.B of the *Plan* provided in relevant part:

> B. *Discharge of Claims and Cancellation of Equity Interests*
>
> Except as otherwise specifically provided in any other provision of the Plan, or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall be in complete satisfaction of and shall discharge and terminate . . . all pre-Effective Date debts and Claims . . . against . . . the Debtors . . . **to the fullest extent permitted by section 1141 of the Bankruptcy Code.** Except as provided in any other provision of the Plan, on the Effective Date, . . . all Claims against the Debtors . . . shall be and shall be deemed to be, satisfied, discharged and terminated, and all Holders of Claims against any of the Debtors shall be **precluded and enjoined** from asserting against the Debtors any . . . Claim against any of the Debtors based upon any claim . . . that occurred prior to the Effective Date, whether or not such Holder has filed a proof of claim . . . .

64

(Emphasis added.)

As the title of § X.B notes, this section concerns the discharge of claims, and discharge in this § X.B was permitted "to the fullest extent provided by section 1141 of the Bankruptcy Code." As noted above, 11 U.S.C. § 1141(d)(2) barred discharge of the IRS's claim for 2003 income taxes, and thus the IRS's claim was not subject to the discharge injunction of 11 U.S.C. § 524(a)(2). Section X.B was not intended to discharge, and could not discharge, the IRS's claim for 2003 income taxes. Thus, other claims were "satisfied, discharged and terminated" by reason of the debtors' discharges, and all holders of such claims were, by reason of the discharge injunction of 11 U.S.C. § 524(a)(2), "enjoined from asserting against the Debtors any . . . Claim . . . that occurred prior to the Effective Date." However, this was not intended to apply to the IRS's claim for 2003 income taxes. If § X.B enjoined all claims, even nondischargeable ones, it would not have made sense to refer to claims being discharged "to the fullest extent provided by section 1141 of the Bankruptcy Code." The court must avoid an interpretation that would make language under the contract surplusage. *D.C. Pub. Serv. Comm'n*, 963 A.2d at 1157. It follows that the injunction in § X.F was not intended to apply to the IRS's nondischargeable tax claim.

In any event, if the injunctive language enjoined conduct

not otherwise enjoined under the Code:

- the notice of the hearing on confirmation (including the disclosure statement transmitted therewith) did not, as required by Fed. R. Bankr. P. 2002(c)(3)(A), "include in conspicuous language (bold, italic, or underlined text) a statement that the plan proposes an injunction" as set forth in § X.B; and

- the injunctive language of § X.B was not set forth in "conspicuous language (bold, italic, or underlined text)" as required by Fed. R. Bankr. P. 3016(c).

By reason of the debtors' failing to comply with the notice requirement of Rule 2002(c)(3), and failing to set forth the injunction in § X.B in "conspicuous language (bold, italic, or underlined text)" as required by Rule 3016(c), the injunction did not operate as an injunction "against conduct not otherwise enjoined under the Code," and must be viewed as limited to conduct enjoined by the discharge injunction of § 524(a)(2). Like the injunction in § X.F of the *Plan*, as discussed above, the injunction in § X.B is void as to the IRS's nondischargeable claim based on failure to comply with the requirement that reasonable notice and opportunity for hearing be afforded the party against whom relief is sought.  The failure to comply with Rules 2002(c)(3) and 3016(c) clearly was a failure to give reasonable notice, rendering the injunction in § X.B ineffective

against the IRS's nondischargeable claim for 2003 income taxes.
*See In re Auto-Train*, 810 F.2d at 278 (content of notice must be
reasonable); *In re Shelbourne North Water Street L.P.*, 556 B.R.
at 883; *In re Manchester Gas Storage*, 309 B.R. at 369 n.10.

To summarize, the injunctive language in § X.B was not
intended to operate to enjoin conduct not already enjoined by the
discharge injunction of 11 U.S.C. § 524(a)(2), and even it had
been intended to so operate, it could not so operate because of
the debtors' failure to comply with Rules 2002(c)(3) and 3016(c).

D

### THE INJUNCTIONS IN THE CONFIRMATION ORDER

Paragraphs 11 and 14 of the *Confirmation Order* included
language enjoining holders of claims against the debtors.  As in
the case of § X.F of the *Plan*, as modified, if these paragraphs
permanently enjoin the IRS from collecting its claim for 2003
income taxes, that would amount to discharging the claim and
barred by 11 U.S.C. §§ 1141(a) and 1142(d)(2).  Moreover, the
injunctions are ineffective as to the IRS's claim for 2003 income
taxes for additional reasons.

Paragraph 14 of the *Confirmation Order* is readily viewed as
having no impact on the IRS's right to now collect its claim for
2003 income taxes.  Paragraph 14 merely enjoined holders of
claims "from taking any action to interfere with the
implementation or consummation of the Plan," the same as § X.E of

the *Plan*.  It does not bar collection of the IRS's claim for 2003 income taxes now that the *Plan* has been implemented and consummated.

Paragraph 11 of the *Confirmation Order* contains ambiguous language that could be read to bar collection of the IRS's claim. It provided in relevant part:

> **Except as otherwise provided in the Plan** or this Order, all Holders of . . . Claims shall be precluded and **enjoined** from asserting against the Debtors . . . or any of their respective assets or properties any . . . Claim based upon any claim, right, act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

(Emphasis added.)  However, the *Plan* provided that the IRS's nondischargeable tax claim would not be discharged, *i.e.*, would remain collectible, which is contrary to the claim being enjoined.  Accordingly, because the *Plan* provided otherwise, this provision of the *Confirmation Order* cannot be read as enjoining collection of the nondischargeable tax claim.

Moreover, no notice was provided to creditors in accordance with Fed. R. Bankr. P. 2002(b)(3)(A) and 3016(c) that the debtors were seeking an injunction against collection of the IRS's nondischargeable claim for 2003 income taxes.  Accordingly, like §§ X.B and X.F of the *Plan*, if the provision enjoined collection of claims beyond the discharge injunction, this provision is void as to the IRS's claim for nondischargeable income taxes for 2003 because the IRS was not given notice in accordance with Fed. R.

68

Bankr. P. 2002(b)(3)(A) and 3016(c).

In any event, as announced at the confirmation hearing, my intent was to sign a confirmation order confirming the *Plan*, with the modifications presented at the confirmation hearing, not to grant relief beyond that.  Presumably the intent of the attorneys present at the hearing was to present a proposed confirmation order in conformance with that stated intent.  The *Confirmation Order* granted relief beyond that set forth in the *Plan* as modified, is thus inconsistent with the court's stated intent, and it is appropriate to strike such additional relief pursuant to Fed. R. Civ. P. 60(a), generally made applicable in relevant part by Fed. R. Bankr. P. 9024.

Rule 9024 provides that a complaint to revoke a Chapter 7 discharge may be filed only within the time allowed by 11 U.S.C. § 727(e) and that "a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330."  However, acting under Rule 60(a) to correct a mistake in a confirmation order does not amount to seeking to

revoke the confirmation order.[21]   In applying Rule 60(a), the

court is not setting aside confirmation of the *Plan* as modified,

but is striking provisions that went beyond confirming the *Plan*

as modified.   That does not amount to revoking a confirmation

order within the meaning of 11 U.S.C. § 1144, but instead is

correcting the *Confirmation Order* to strike provisions that did

not belong in it in the first place because they went beyond

confirming the *Plan* as modified.

Rule 60(a) permits a court to "correct a clerical mistake or

a mistake arising from oversight or omission whenever one is

found in a judgment, order, or other part of the record," and to

do so "on motion or on its own, with or without notice."   Rule

60(a) applies when "the record indicates that the court intended

---

[21]   *See In re Brown*, 369 B.R. at 604 (time limit of 11
U.S.C. § 1330 to seek to revoke discharge did not bar Rule 60(a)
motion to correct a clerical error); *Wetherbee v. Willow Lane,
Inc. (In re Bestway Prods., Inc.)*, 151 B.R. 530, 534 n.11 (Bankr.
E.D. Cal. 1993), *aff'd*, 165 B.R. 339 (B.A.P. 9th Cir. 1994) (Rule
60(a) motion to correct mistake of clerk's listing owner of
corporate debtor as receiving a discharge was not barred by the
time limit of § 727(e) to file a complaint in Chapter 7 to revoke
a discharge); *In re Filice*, 580 B.R. 259 (Bankr. E.D. Cal. 2018)
(notwithstanding § 727(e), Rule 60(a) empowers a bankruptcy court
to vacate a discharge entered by the clerk based on the clerical
error of not recognizing that the debtor was ineligible under 11
U.S.C. § 727(a)(8) for a discharge because he had received a
discharge in a case commenced within 8 years before the filing of
the petition in the current case).   *Cf. Cisneros v. United States
(In re Cisneros)*, 994 F.2d 1462 (9th Cir. 1993) (Chapter 13
trustee mistakenly reported that all claims had been paid as
required by terms of confirmed plan, and the clerk entered a
discharge.   Despite the time limit in 11 U.S.C. § 1328(e) for
revoking a Chapter 13 discharge, the discharge could be vacated
pursuant to Rule 60(b) based on the trustee's mistake).

to do one thing, but by virtue of a clerical mistake or oversight, did another." *Fanning v. George Jones Excavating, L.L.C.*, 312 F.R.D. 238, 239 (D.D.C. 2015) (quoting 12 Moore's Federal Practice § 60.11(1)(a) (3d. ed. 2015)).  Accordingly, a court may employ Rule 60(a) to conform a judgment to "the contemporaneous intent of the court." *Jackson v. Jackson*, 276 F.2d 501, 503 (D.C. Cir.), *cert. denied*, 364 U.S. 849 (1960) (noting, 276 F.2d at 504, that "the court was within its authority in correcting its judgment to conform with the decision it had originally made").  Expressed another way, Rule 60(a) applies where a judgment was "erroneous because the thing spoken, written or recorded is not what the person intended to speak, write or record." *Allied Materials Corp. v. Superior Prods. Co.*, 620 F.2d 224, 225-26 (10th Cir. 1980)).  Rule 60(a) may be utilized when "the judgment simply has not accurately reflected the way in which the rights and obligations of the parties have in fact been adjudicated." *Bernstein v. Lefrak (In re Frigitemp Corp.)*, 781 F.2d 324, 327 (2d Cir. 1986).

This is a clear case warranting invoking Rule 60(a) to strike any injunctive relief that went beyond what was provided in the *Plan* as modified by the modifications presented at the confirmation hearing, and thus inconsistent with my intent

71

expressed at the confirmation hearing.[22]  It was certainly not my intent in my ruling at the confirmation hearing to enjoin the collection of any IRS claim for nondischargeable taxes.[23]  The debtors have been well aware since soon after the *Confirmation Order* was entered that the IRS was pursuing its claim for the debtors' income tax liability for 2003, so applying Rule 60(a) does not come as a prejudicial surprise.  Accordingly, the *Confirmation Order* will be revised to indicate that the injunctions in the *Confirmation Order* do not enjoin collection of claims that are nondischargeable under 11 U.S.C. § 523 and thus do not enjoin collection of the IRS's nondischargeable claim for 2003 income taxes and interest thereon.

## X

## CONCLUSION

Based on the foregoing, it is

---

[22]  *See Korea Exch. Bank v. Hanil Bank, Ltd. (In re Jee )*, 799 F.2d 532, 535 (9th Cir. 1986) (Rule 60(a) permitted judgment reflecting a dismissal *with prejudice* to be changed to reflect a dismissal *without prejudice* where the transcript of the dismissal hearing showed that the district court intended to grant a voluntary dismissal without prejudice); *Huey v. Teledyne*, 608 F.2d 1234, 1237 (9th Cir. 1979) (Rule 60(a) permitted a judgment reflecting a dismissal without prejudice to be changed to reflect a dismissal with prejudice where the transcript of the dismissal hearing showed that the district court intended to dismiss the case with prejudice).  *See also Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 197 n.35 (5th Cir. 2011).

[23]  A "judge's own subsequent statements of his intent" are reliable evidence in the Rule 60(a) context.  *In re Jee*, 799 F.2d at 535.

ORDERED that the IRS's claim claim against the debtors, Marc S. Barnes and Anne M. Barnes, for income taxes for the year 2003 and interest thereon is nondischargeable under 11 U.S.C. § 523(a)(1)(A); that the *Plan* and the *Confirmation Order* did not discharge, release, or enjoin collection of that claim; but that the IRS's claim for penalties relating to the income taxes for the year 2003 is discharged and the collection of those penalties is subject to the discharge injunction of 11 U.S.C. § 524(a)(2). It is further

ORDERED that pursuant to Fed. R. Civ. P. 60(a), the *Confirmation Order* is revised to indicate that the injunctions in the *Confirmation Order* do not enjoin collection of claims that are nondischargeable under 11 U.S.C. § 523 and thus do not enjoin collection of the IRS's nondischargeable claim for income taxes for the year 2003 and interest thereon.  It is further

ORDERED that the debtors' *Motion to Enforce the Plan Injunction and Discharge Injunction Against the Internal Revenue Service* (Dkt. No. 339) is thus granted with respect to discharging and enjoining collection of the claim for penalties relating to the income taxes for the year 2003 but is otherwise DENIED.

[Signed and dated above.]

Copies to: Recipients of e-notifications of orders